THE MARINE WHARF AND STORAGE CO. v. PARSONS.

1. JURISDICTION—THE TITLE to the land in question held to have been adjudged valid by a court of competent jurisdiction.
2. JUDGMENT.—Where a judgment appears valid on its face, it cannot be impeached *collaterally* on matters *de hors* the record.
3. SUMMONS—SERVICE—MINOR—U. S. CONSULAR AGENT.—A summons was personally served on a minor in Spain by a person who made affidavit of the fact before a U. S. consular agent in Spain. *Held*, sufficient proof or service, or that it was a mere irregularity which could not be attacked collaterally.
4. IBID.—IBID.—U. S. CONSULAR AGENT—AFFIDAVIT.—An affidavit made before a U. S. consular agent in Spain, that service of summons was personally made in kingdom of Spain, is a good proof of service. *Woolfolk* v. *Graniteville Mfg. Co.*, 22 S. C., 337, distinguished from this.

Before BENET, J., Charleston, June, 1896. Affirmed.

Action in foreclosure by the Marine Wharf and Storage Company against Charles Parsons, jr. The following is so much of the Circuit decree, taken with the opinion, as is necessary to understand the facts and questions raised:

It is now proper to examine the facts in the record of the old suit of *Holmes* v. *Zanoguera*, in 1875. At that time one S. Zanoguera, then a resident of Charleston, S. C., died, leaving a widow, Mrs. Catalina Zanoguera, and certain infant children, namely, Catalina, Elvira, Mary, Antonio, Madelina, Miguel, and Juanna Maria. Mr. F. P. Salas was appointed by the probate court of Charleston County general guardian of the children, and Mr. George S. Holmes was made the administrator of Sebastian Zanoguera's estate. This was done on the petition of the minors, and also of the widow. It became necessary to sell the property of the deceased, and the widow, and the administrator, and the guardian went into court, asking that the property be sold, all the debts of the deceased paid, and the balance turned over to the widow and children. Inasmuch as the minors seemed, before the commencement of the

suit, to have removed to the island of Majorca, Spain, and
to have resided outside of this State, it was necessary to
serve them by the service of the summons and complaint
upon the mother of the minors, and upon the general guar-
dian, and upon the minors themselves. All this was done.
Mrs. Zanoguera admitted that she and the children had been
served, and the general guardian also acknowledged these
facts, and asked that a guardian *ad litem* be appointed for
the minors, to protect their interests. This was done, and
the Court proceeded and settled up the estate for all the
parties in interest. The record shows this admission of
service on the part of Mrs. Zanoguera, sworn to before a
United States consular agent at Palma, island of Majorca,
and also the affidavit of the general guardian of the child-
ren, Mr. Salas, to the same effect. Under the order of Court,
a person named Miguel Sbert was directed to make the ser-
vice of the summons and complaint upon the minors Mi-
guel Sbert did this, and he forthwith made an affidavit to
that effect on the 6th of October, 1875, before Ernesto Ca-
nut, who at that time was United States consular agent at
Palma, and the latter certified to the same under his official
hand and seal, Miguel Sbert signing the affidavit before him.
The summons was also published in the newspaper, but it
does not appear that the order directed deposit in the post
office, or that such deposit was made. The cause went on
to trial and decree, and the property being sold, did not
bring enough to pay even the mortgages on it, the mort-
gagees having been made parties to the suit.

The answer sets out the sole alleged defect, namely, the
proof of service by Sbert before a consular agent in 1875,
and practically admits that the affidavit obtained on July
30th, 1895, cured the same, except as to Maria, Antonio,
and Miguel, who did not sign it, and Juanna, who, it is al-
leged, was under twenty-one when she attached her signa-
ture. All questions as to the other heirs, then, is at once
eliminated. So far as Juanna is concerned, the mere fact
that she was not of full age when she signed the affidavit

in July, 1895, would not seem to offer any difficulty, for several reasons. The records show she was then over twenty years old, and certainly her affidavit would estop her from ever afterwards disputing the truth of the facts sworn to therein. Besides this, she was subsequently bound by the decree of September 7th, 1895, along with the others, as will be shown hereafter; for it not being alleged in the answer that she was not of full age when this decree was taken, she is so presumed to have been. And even if she was a minor when the decree was taken, she was a party to the suit, and the decree against her, while possibly voidable as to her in a direct proceeding, is valid and binding as to third parties. She would be, therefore, barred and bound. 12 Am. & Eng. Enc. Law, p. 88; 1 Black on Judgments, sec. 195; Freeman on Judgments, sec. 151. As to the other three parties, it is also quite apparent that the new suit in 1895 barred and bound their interests, if they were then of full age, and before the Court. Of these three, Miguel and Antonio are easily next disposed of. Nothing at all is alleged of Miguel in the answer, and he being of full age and duly made a party to the new proceeding, the decree of the Court in 1895 certainly was valid and binding as to him. On the death of Antonio, intestate, his interest descended to his mother and brothers and sisters, and all of them were before the Court in 1895, and thus were barred and bound by the proceedings then taken. Maria alone is now left, and as to her the allegation of the answer is, that at the time the proceeding to declare and confirm the title was brought, in 1895, she was dead, "having died in April, 1890, leaving as her heirs her husband, and a child now about six years old, and that these heirs were not parties to the said proceedings." Thus about Maria and her share only is there any question really raised in the answer or worthy of being considered; and with reference to her, therefore, will the discussion now proceed. What is here said as to her, however, is sometimes also applicable

to the other parties referred to in the answer, should any further discussion seem necessary as to them.

The plaintiff on argument took several positions, which all then seemed and still seem sound. In the first place, I cannot bring myself to do otherwise than hold that the oath as to proof of service by Miguel Sbert before the United States consular agent, in 1875, was originally a valid affidavit. There is no direct case in point in South Carolian, but an examination of the statutes shuts me up to this conclusion, the alternative being a construction which would make the Code provision a nullity, and practically repeal it. The Code, section 161, act 1870, vol. 14, page 458, gives the alternative of personal service outside of the State, instead of publication, and then provides that service may be proved, "if made by any other person" than the sheriff, by "his affidavit thereof." Nothing is said as to the character of the officer before whom this affidavit is to be made. The sole question, therefore, is whether the affidavit of Miguel Sbert was made in the island of Majorca, Spain, before one authorized legally there to administer an oath. In other words, was it then and there an affidavit? There can be no doubt of this. Under the laws of the United States in force in 1875, every consular agent is so empowered, and his acts are to be given the same force and effect as those of a "notary public or any other person so authorized or competent thereto in the United States." Rev. Stat. U. S., Ed. 1878, p. 311. "An affidavit is a formal written or printed voluntary *ex parte* statement, sworn or affirmed to before an officer authorized to take it, to be used in legal proceedings." And it must "be sworn to before a competent person—that is, before a particular officer or one of a particular class, where *a statute or rule of court requires it;* otherwise, before *any one authorized to administer an oath.*" 1 Am. & Eng. Enc. Law, 307, 308 and 178. Our statute and rule of court in 1875 being silent as to the character of the officer before whom the affidavit was to be made, "any one authorized to administer an oath" could take and certify the same. A

number of cases from courts of recognized authority have been cited supporting this view, and among them the following are directly in point: *Tucker* v. *Ladd*, 4 Cowan, 47; *Wood* v. *Jefferson Bank*, 9 Cow., 194, 200; *People* v. *Tioga*, 7 Wendell, 516; *Manfs. Bank* v. *Cowdon*, 3 Hill, 461. The very question as to affidavits was made and so ruled upon in these cases. The case of *Woolfolk* v. *Graniteville Mfg. Co.*, 22 S. C., 337, relied on by defendants, not only does not conflict with, but really is in line with, the decisions above referred to, for the reason that the statute in that case required that before a deed should be recorded, it must be proved by the oath of a subscribing witness, the Court holding that the provisions of the law with regard to an affidavit before a magistrate related only to a deed executed within the State, and that the act of 1788 had specially provided for the proof of a deed executed out of the State, which should be by a *dedimus;* and that, therefore, there being a special provision of the statute, no other mode could be made use of. The whole thing was statutory, and the Court so stated. In the case of *Armstrong* v. *Austin*, however, decided by Chief Justice McIver, and reported in 45 S. C., the Court refers to this very fact. In that case the witness making the affidavit did not sign the same, and it was urged that the affidavit was bad. The case of Woolfolk against the Graniteville Company was evidently pressed upon the Court, but the Court replied that in that case there were the express terms of the statute, but there were no express terms of the statute as to the signing of the affidavit, but it was provided merely that the affidavit should be made by a subscribing witness, and they, therefore, held the affidavit to be sufficient. These two cases point to the very conclusion reached in the present decree, and are indications of the intention of the Court to give the performance of acts under statutes a reasonable and liberal interpretation, unless the plain terms of the statute demand otherwise. In the case now at bar the statute uses the word "affidavit," and I am bound to avoid a construction which would prac-

tically contradict this word, and annul the statute so far as the relief of personal service outside of the State was concerned. There was no officer in Spain in 1875 qualified by the laws of South Carolina to administer an oath, for a *dedimus* was directed to prove a deed alone. The statute clearly intended to allow personal service outside the State in foreign countries, and provided that it could be proved by the "affidavit of the person making it." I cannot, in the absence of a decision in this State so holding, and in the face of decisious to the contrary elsewhere, construe away these provisions of the statute, and the relief they afford and the rights vested thereunder. I hold, therefore, that the proof of service in 1875 was legal and valid. It would seem almost useless to repeat and adopt the other positions of the plaintiff, but as they all are, in my opinion, equally conclusive and convincing, it becomes my duty to refer to them, although briefly.

The second position taken, and in which I concur, is, that even if the original affidavit was defective, because not taken before an officer qualified by the laws of South Carolina to administer an oath, then this was a mere irregularity, which cannot be attacked collaterally, and after such a length of time. There is a presumption in favor of the regularity of judicial proceedings, and this presumption becomes conclusive after lapse of time and without objection being made. And there is also a great distinction between defective service and total want of service—in one case the judgment is void, while in the case of defective service the judgment is valid until set aside in direct proceedings, and is proof against collateral attack. 22 Am. & Eng. Enc. Law, 161. Only a jurisdictional defect appearing on the record can be taken advantage of in a collateral proceeding. *Tiderall* v. *Bouknight*, 19 S. C., 526; *Hahn* v. *Kelly*, 94 Am. Dec., 764. From the number of authorities to this effect in our State, the citation of only a few of them will be necessary to support this conclusion: *Tiderall* v. *Bouknight*, 23 S. C., 275, 279, 282; *Genobles* v. *West*, 23 S. C.,

154, 167; *Lyles* v. *Haskell*, 35 S. C., 391. The latter case is particularly in point, inasmuch as in it the Court stated that the purchaser at a subsequent judicial sale could not attack for irregularity some prior proceeding affecting the title to the property purchased. And the Court held that, notwithstanding a good deal of irregularity in the former proceedings, the purchaser under the new proceeding was not in a position to question it. The language of the Court is instructive on this point, and is as follows: "There was an order of sale, which it is the settled policy of the State to maintain, if it can be done without violating principle or doing injustice. There was a judgment rendered by a competent Court having jurisdiction of the subject matter, and that presumes that all things were rightly done. Objections to mere irregularity in the proceedings will not be heard to impeach a judgment. Nothing, in fact, will be allowed collaterally to invalidate a title acquired under it but jurisdictional defects which appear in the record." This being the case, the question is, whether the alleged defect with regard to the proof of service by Sbert in 1875 was jurisdictional or a mere irregularity. I find from cases cited that almost everywhere it has been held that an alleged defect of this sort, even if it be a defect at all, is treated as a mere irregularity which can be amended at any time. See cases of *Commercial Union Assur. Co. of London* v. *Everharts, Administrator* (Va.), 14 S. E., 386; *Turner* v. *Holden* (N. C.), 13 S. E., 731; 109 N. C., 182; *Shufeldt* v. *Barlass* (Neb.), 51 N. W., 134—cited at page 5594 of American Digest, 1892; *Shenandoah Val. R. Co.* v. *Ashby's Trustees* (Va.), 9 S. E., 1003; *Tyler* v. *Jewell* (Ky.), 11 S. W., 25— cited at page 4108 of American Digest, 1889. In the case of *Forbes* v. *McHaffie* (Neb.), 49 N. W., 721, it was held, that although under the Nebraska statute a special deputy, appointed to serve a summons, was required to make his return under oath, jurisdiction was obtained if no objection was made to the return on that ground, although the return was not under oath. In the case of *Hill* v.

*Gordon*, 45 F. R., 276, where there was personal service on the defendant, but the return was in the name of the special deputy marshal, instead of the marshal, as required by the statute, this was decided to be a mere irregularity, to which an objection could not be raised by strangers to the judgment. It there appeared that the original suit was brought at common law in 1869, while the new suit between different parties was brought in 1890. The language of the Court is peculiarly appropriate to the present case, and is in the following words: "This Court will not, at this late day, say that the Court who tried the cause was so remiss in its duty as to allow judgment to be entered in a cause in which the Court had no jurisdiction. * * * It is contended by the complainants that the Court had no jurisdiction of the person of the defendant, John T. Matthews, because the return upon the original writ was made in the name of a special deputy United States marshal, and not in the name of the marshal. There was personal service upon the defendant, and the making of the return in the name of the deputy was, at the most, only an irregularity, which the defendant above could take advantage of in the original proceedings, and cannot be raised by strangers to the judgment. I am of opinion that the Court had jurisdiction both of the subject matter and the person of the defendant." These cases seem to be overwhelming, and, in the language of *Lyles* v. *Haskell*, 35 S. C., it is evident that "there was no surprise to the infants; they had their day in Court; they derived full benefit from the proceeding, and they are not here making complaint." The proof of original service in the old suit, therefore, even if defective, was only such an irregularity as cannot be questioned in this present proceeding, twenty-one years afterwards.

But supposing, for the purpose of argument, that the defect was not a mere irregularity, then the next question would be, whether or not the new proceedings, brought in 1895, cured the defect, and are binding in the present suit on the purchaser. I am of opinion that such is the case.

It will be remembered that in 1895 new proceedings were brought against all the former defendants, and that after due service by publication, judgment was taken against them, the Court holding that the original service and proceedings *had been valid*, and also further confirming and validating the title. We have already seen that the record in one suit cannot be questioned collaterally in another suit, by third parties, save for jurisdictional defects appearing on the face of the proceedings; and the further rule is, that facts alleged and confirmed by judgment in one suit cannot be rebutted by parol testimony, at the hands of third parties, in another suit. And the courts hold, that if it appears, and the record shows in a former suit, that all the parties were of full age, and judgment was duly had, third parties in a collateral subsequent suit cannot set up or prove the allegation that some of these parties in the former suit were minors. Unless the record in the first proceeding shows the contrary, it must be judicially held that the Court had acquired the necessary jurisdiction and had before it parties against whom it could pronounce its judgment. *Hahn* v. *Kelly*, 94 Am. Dec., 764. Unless the contrary appeared, therefore, on the record of 1895, the fact of all of the defendants having been of full age and of all of them having been alive, is presumed as matter of law, and the judgment of the Court thereon cannot be contradicted by parol testimony in a collateral proceeding, nor can allegations to this effect be permitted. *Tederall* v. *Bouknight*, 25 S. C., 275. In that case, it appeared that there had been in a former proceeding a partition in a probate court, regular on its face, in which, so far as the record went, all of the parties were of full age, and had been served. In the subsequent proceeding, brought some years after, the Court held, at page 280, that the defendants could not be permitted to show that one of the parties to the former suit in the probate court was then a minor and not properly before the Court, laying down the doctrine that the judgment in the former suit, regular on its face, must be taken as an absolute verity, and

beyond the reach of contradiction or assault in a collateral
manner.   In the proceedings in 1895, the record to formal
judgment and decree is regular, and is presumed to show
that all the parties *were before the Court, and that all were
alive, and that all were of full age.*   The present proceed-
ing, which is a collateral one, cannot impeach the former
record by parol testimony, nor can such facts be alleged,
*for that cannot be alleged which should not be permitted to
be proved.*   I cannot, therefore, in this subsequent proceed-
ing between third parties, permit the defendant collaterally
to impeach the record of the confirmation suit of 1895, by
alleging, and, therefore, obtaining, as it were, permission to
prove these facts as to minority and death, which do not
appear in and would contradict the former record..   The
original parties in a direct proceeding might be suffered to
state and prove them, but this dangerous privilege should
never be accorded to strangers in a collateral suit.   I feel,
then, constrained to ignore these facts and strike them out
of the answer.

Lastly, I regard the bond as due, by its own terms.   Fur-
ther ruling on the part of the Court would seem almost su-
perfluous.   But I am constrained to say that I am not by
any means clear that the defendant had under the terms of
his bond the slightest right to interpose any defenses what-
soever, although I have, it is true, listened to and discussed
them all..   The bond of the defendant states that it will be
paid as soon as any court of *"competent jurisdiction"* shall
either *hold the original title to have been good* or make it
good so far as the old alleged defect was concerned.   Now,
in 1895 a suit was brought against the parties in the old
suit, in the Court of Common Pleas for Charleston County,
this very Court, a court of competent jurisdiction; and after
proper and regular proceedings, the Court by its order ad-
judged and decreed that the former proceedings had been
valid and regular.   In other words, it *"held"* the former
title to have been "good."   It is shown that third parties
cannot question this collaterally; but, in addition to this,

defendant did not even stand in the position of an ordinary third party, for he has in his bond expressly agreed that if any court of competent jurisdiction were to hold the title good, under the original proceeding, he would pay his bond. A court of competent jurisdiction, this very Court, has done this, and the decree stands of record here, and, therefore, the bond is payable. It is evident that the Court which passed the decree in 1895 was a court of competent jurisdiction, and its judgment by default concluded everything raised by the proceedings. Van Fleet on Collateral Attack, sec. 17; 21 Am. & Eng. Enc. Law, 268, 269. It is not here contended, that so far as the *confirmation and making* of the title good in 1895 is concerned, the judgment of the Court could bind parties not before it. But the question as to whether the title *had formerly been good*, was also raised and passed upon, and decision was made on that very point, and it was made by a court of competent jurisdiction. It is, in all other proceedings, and as to everbody except heirs who were not parties to the former suit, absolutely conclusive. And even as to these heirs, while they might question the correctness of this conclusion of the Court in some subsequent proceeding, still, if the Court reversed the decision made at that time, it would save the intervening rights of third parties.

It may be urged by the other side, that while a court of competent jurisdiction has held this title to have been valid, that the Supreme Court might not agree with it. This, however, I cannot regard. In making their bond, they should then have stated that they would pay it when a court of competent jurisdiction and of *last resort* had declared the title to have been formerly valid. They did not see fit to do this, and a court of competent jurisdiction having passed on the very question set out in the bond, and having declared the former title to have been valid, the bond is due by its own terms, and its payment cannot be resisted by the defendant. For all of these reasons, I am thus unable to apprehend any defense in the answer, and must, therefore,

grant the demurrer and strike the answer out, giving the necessary default judgment in foreclosure.

It is, therefore, ordered, adjudged, and decreed, that the answer herein be stricken out, as not containing or stating facts sufficient to constitute a defense.

From this decree the defendant appeals on the following grounds:

First. Because his Honor erred in finding that to the suit of plaintiff against Catalina Zanoguera *et al.*, commenced in July, 1895, that all the heirs of Zanoguera were made parties defendant, and that the record shows that they were all duly and regularly served by publication and mailing of the summons and complaint, but, on the contrary, should have found that the following heirs of said Zanoguera were not duly made parties, and were not duly served, viz: Mary and Antonio, who were then deceased, and Joanna, who was a minor, and for whom no guardian *ad litem* was appointed.

Second. Because his Honor erred in finding that in July, 1895, there was obtained an affidavit from all of the heirs of Zanoguera, then in the Spanish island of Majorca, to the effect that all of the parties had been served in the former cause, but his Honor should have found that such affidavit was made by five out of the eight heirs; that one of these (Joanna) was under age; and that of the rest, Mary and Antonio were dead, and that they and Miguel did not sign the affidavit.

Third. That his Honor erred in finding, with regard to the case of Holmes *v.* Zanoguera, in 1875, that the widow and the administrator and the guardian went into court, asking that the property be sold, but should have found that the administrator was the sole plaintiff, and all others were named as defendants.

Fourth. That his Honor erred in finding with regard to the said case of Holmes *v.* Zanoguera that, it being necessary to serve the minors by service of the summons and complaint upon the mother of the minors, and upon the

general guardian and upon the minors themselves, that "all this was done," but, on the contrary, should have found that there was no proof of the service of the summons upon the minors, as the alleged affidavit of Miguel Sbert before the consular agent was not the proof required or allowed by the laws of this State; also, that his Honor erred in holding elsewhere in the decree that such service was proved by the affidavit of Miguel Sbert.

Fifth. Because his Honor erred in holding that the record in Holmes *v.* Zanoguera, the suit of 1875, shows a case with all the parties apparently before the Court, including the minors, but, on the contrary, he should have found that it appears on the face of the record of said suit that there is no legal proof of the service of the summons on the said minors, the only proof thereof being the said alleged affidavit of M. Sbert, taken before a United States consular agent, and not according to the laws of this State.

Sixth. Because his Honor erred in holding that the answer herein practically admits that the affidavit of July, 1895, cured the defects in the title as to the adults who signed the same, and that all questions as to them are eliminated, but, on the contrary, should have held that an affidavit so taken after judgment in the cause of Holmes *v.* Zanoguera, in 1875, was not sufficient to amount to a proof of service, even with regard to the adults who signed the same.

Seventh. That his Honor erred in holding that the fact that Joanna was not of age when she signed the affidavit in 1895, would not seem to offer any difficuly, but, on the contrary, should have held that such affidavit of a minor would not be equivalent to actual legal service on the minor to the suit in 1875, nor was it any proof thereof.

Eighth. That his Honor erred in holding that Joanna was bound by the decree of 1895, but should have found that she was not shown to be then of full age, and that no guardian *ad litem* had been appointed for her.

Ninth. That his Honor erred in holding that if Joanna was a minor when the decree of 1895 was taken, she was a

party to the suit, and the decree against her, while possibly
voidable as to her in a direct proceeding, is valid and bind-
ing as to third parties—she would be, therefore, *barred* and
bound—but, on the contrary, should have held that it is
the duty of a purchaser to see that all proper persons are
properly made parties to a suit affecting the title which he
purchases, and that he is not bound unless all proper per-
sons are properly made parties; and Joanna was not prop-
erly made a party in the cause of 1895, because she was
under age, and no guardian *ad litem* was appointed for her.

Tenth. That his Honor erred in holding that the suit of
1895 bound the interests of the parties, if they were then of
full age and before the Court, and so bound the interest of
Miguel Zanoguera, but should have held that the said suit
presented no case stating a cause of action as to which the
Court had any jurisdiction, *i. e.*, that the subject matter of
the suit presented no cause of action, and so neither Miguel
nor any of the other parties were bound thereby.

Eleventh. That his Honor erred in holding that, on the
death of Antonio, intestate, his interest descended to his
mother and brother and sisters, and all of them were before
the Court in 1895, and thus were barred and bound by the
proceedings then taken; but should have held that there
was no proof that Antonio was intestate, nor of the time of
his death that when he died he was not bound by the de-
cree in the suit of 1875; that if he was intestate when he
died, that then what of his interest went to his mother and
brother and sisters was interests in them accruing to them
after the decree in Holmes *v.* Zanoguera, and could not be
affected by the decree in that suit, nor by that of the suit
of 1895, but were independent titles in them which never
have passed to the defendant; that if he died after Mary,
then the infant child of Mary is one of his heirs, and that
child's title never passed to the defendant herein; and if he
died before her, that child still has the part of his interest
that it takes from its mother.

Twelfth. That his Honor erred in holding, in considering

the case as to Maria and her share, that the oath as to proof of service by M. Sbert before the U. S. consular agent in 1875 was originally a valid affidavit, but should have held that it was not an affidavit nor proof of service required or allowed by the laws of this State, and that such oath was not an affidavit recognized by our law.

Thirteenth. That his Honor erred in holding that the proof of service in 1875 was legal and valid, but should have found the contrary.

Fourteenth. That his Honor erred in holding that even if the original affidavit of service of 1875 was defective, then this was a mere irregularity, which cannot be attacked collaterally and after such a length of time, but should have held that it is the duty of a purchaser taking title coming under a sale by the Court, to see that the Court has jurisdiction of the subject matter and of the parties, and that if the Court does not have jurisdiction in either respect, he is not bound to take such a title, and he is entitled to have it shown that the Court has jurisdiction; and further, that with regard to the suit of 1875 the want of jurisdiction of the minors was apparent on the face of the record of that suit, and that there can be no presumption in favor of the regularity of the decree in that suit, when the record itself discloses the defect.

Fifteenth. That his Honor erred in holding that, even if the defect of 1875 was not a mere irregularity, the suit of 1895 cured the defect and is binding in the present suit on the purchaser, but should have held that the suit of 1895 had and could have no effect in curing any defect in the suit of 1875, because of the named parties thereto, at least two, viz: Antonio and Mary, had previously died; and Mary had died in April, 1890, leaving a young infant child, not named in the complaint, and so could not have been served by publication or in any other way; and that to such proceedings this defendant was not a party, and that the judgment in that cause was not the judgment of a court of competent jurisdiction, because as to, at least, the said two

named parties the Court had no jurisdiction, nor did it undertake to exercise any jurisdiction over the interests which descended to their heirs. · And, further, his Honor should have held that in this present suit it was a good defense to the bond to show that the title had not been held or made good by a court of competent jurisdiction, and that in maintaining that defense it was competent for him to show that for any reason the Court had no jurisdiction of the cause · or parties, or any of them, in the suit of 1895, and that whether the want of jurisdiction appeared on the face of the record or not.

Sixteenth. That his Honor erred in holding that a court of competent jurisdiction has decreed the title to be good by the decree of 1895, but should have held that it had no jurisdiction as to said two heirs, then deceased, and such want of jurisdiction can be set up by defendant in this case under the terms of the bond sued on, and whether or not such. want of jurisdiction appears on the face of the record or not.

Seventeenth. That his Honor erred in ordering the answer to be stricken out and in giving judgment for plaintiff, but should have overruled the demurrer to the answer, and should have awarded judgment in favor of the defendant.

Eighteenth. That his Honor erred in holding that all of the heirs of Zanoguera, who had been defendants in the former proceeding of Holmes *v.* Zanoguera, were all duly and regularly served by publication and mailing of the summons and complaint in the suit instituted by the Marine Wharf and Storage Company in 1895, it being alleged by the answer and admitted by the demurrer that Maria, one of the heirs of Zanoguera and a party to the original proceedings, had died in April, 1890, leaving surviving her a husband and child, who were not parties to the second suit.

Nineteenth. That his Honor erred in finding that the admission made by Juana, a minor, in 1895, that she had been served in the original proceedings, was the evidence of service in said proceeding required by the law of this State.

Twentieth. Because his Honor erred in holding that it

was not competent for the defendant to allege or prove that necessary parties had not been made in the suit instituted in 1895 for the confirmation of plaintiff's title.

Twenty-first. Because his Honor erred in holding that the decree made in the confirmation proceedings of 1895 was the decree of a court of competent jurisdiction, holding the plaintiff's title to be good, although the court had not acquired jurisdiction over the persons of several of the parties interested in the property.

*Messrs. Lord & Burke*, for appellant, cite: *Proof of service:* Code, 159; 13 S. C., 202; 17 S. C., 75; 22 S. C., 332; acts of 1884, 745; acts of 1888, 1; acts of 1891, 1041. *Remedy of defect:* 31 S. C., 367.

*Messrs. Smythe, Lee,* and *Frost,* contra, cite: *After service judgment against minors cures irregularity:* 35 S. C., 391. *Affidavit sufficient:* Rev. Stat. 1873, 603; sec. 159, Code of 1882; 18 Stat., 745; Rev. Stat. U. S., ed. 1878, 311; 31 S. C., 367; 4 Cow., 47; 9 Ib., 194; 3 Hill, 461. *Irregularity cannot be attached collaterally:* 94 Am. Dec., 764; 23 S. C., 275; Ib., 154; 35 S. C., 391; 19 S. C., 526; 49 N. W., 721; 45 F., 276; 32 Ill. App., 351; 14 S. E., 731; 109 N. C., 182; 51 N. W., 134; 9 S. E., 1003; 11 S. W., 25; 45 F. R., 107, 276; 47 S. C., 525. *New affidavit cured defect if any:* 20 S. E., 401; 25 S. C., 275; 23 S. C., 154; 35 S. C., 391; 40 S. C., 77; 47 S. C., 525.

April 1, 1897.  The opinion of the Court was delivered by

MR. JUSTICE JONES.    This is a suit for the foreclosure of a mortgage of real estate executed by defendant to plaintiff, 17th July, 1895, to secure a bond of same date, for the purchase money, conditioned to pay a certain sum, with specified interest, five years from its date, or as soon before that time as the title to the mortgaged premises shall by a court of competent jurisdiction be held or made good so far as an alleged defect alone is concerned.   Suit was commenced in November, 1895.   The alleged defect is set forth

in the bond, as follows: "That in the case of G. S. Holmes, administrator, *v.* Zanoguera *et al.*, filed and of record in the Court of Common Pleas for Charleston County, in which suit said lot 55 (the mortgaged premises) was sold, the proof of service upon certain minor defendants was made by the affidavit of Miguel Sbest, the person serving said minors, before a consular agent of the United States in the island of Majorca, Kingdom of Spain, which said affidavit is alleged to be defective, and not taken before the proper officer." The complaint, after the usual allegations in such cases, further alleged, that the alleged defect does not, and never did, affect the validity of the title to the said property; but that, in order to further assure and remove all questions from the same, the plaintiff obtained from said Zanoguera heirs, on the 30th July, 1895, an affidavit, before the United States consular agent in Majorca, Spain, to the effect that the service had actually been made by the said Miguel Sbest (since deceased), as set out in the former affidavit of said Sbest, in the case of Holmes, administrator, *v.* Zanoguera, in 1875, and that said affidavit of 30th July, 1895, had been forthwith filed in the records of said cause, *nunc pro tunc*, as further proof of service. The complaint further alleged that, in order to still further remove all shadow of the alleged defect from said title, the plaintiff filed, in the Common Pleas Court for Charleston County, summons and complaint against the heirs at law of Sebastian Zanoguera, wherein it referred to the suit of Holmes, administrator, *v.* Zanoguera, and the alleged irregularity in the proof of service, and prayed the Court to declare the said proceedings and proof of service regular and valid, and no cloud on the title of this plaintiff, or else confirm the said former proceedings. That on the 7th day of September, 1895, Judge O. W. Buchanan therein decreed the proceedings in the case of Holmes, administrator, *v.* Zanoguera to have been valid and binding, and further confirmed and ratified them in all respects, and vested and validated in plaintiff the title to the property in question, and

that said judgment stands of force and unappealed from. The complaint then alleged that the title to the mortgaged property has been by a court of competent jurisdiction held and made good, so far as the alleged defect referred to in said bond is concerned, and that the Court should declare the condition of said bond and mortgage broken. To this end, the complaint prayed, and for foreclosure. The answer denies that the condition of said bond has been broken, and alleges that the matters referred to in said bond did and do affect the validity of the title to the said premises; that in the chain of title is a conveyance of said premises by A. J. White to Sebastian Zanoguera, dated 27th March, 1872; that under proceedings for settlement of the estate of said Sebastian Zanoguera, the said premises were conveyed by the sheriff of Charleston County to Robert Hunter, January 6th, 1876; that on settlement of the estate of Robert Hunter, said premises were conveyed by a master of said Court to the plaintiff, July 31st, 1890, and that on 17th July, 1895, plaintiff conveyed same to defendant; that in said proceedings for settlement of the estate of Sebastian Zanoguera, who died intestate, his widow and seven minor children were named as parties, but there is no proof of the service of the summons on the said infant defendants, who were then aged about one, three, four, six, nine, thirteen, and sixteen years, respectively, except an affidavit of service before a United States consul, or agent, as set out in the bond annexed to the complaint. As to the affidavit of 30th July, 1895, the answer admitted that such an affidavit was obtained from some of the heirs of said Sebastian Zanoguera, but alleged that some of the heirs, Maria, Antonio, and Miguel, did not sign the affidavit; and alleged, on information and belief, that Maria and Antonio are dead, and that Juanna, who did sign the affidavit, was then under twenty-one years of age. As to the proceeding in the case of Marine Wharf and Storage Company *v.* Catalina Zanoguera and others, in 1895, referred to in the complaint, the answer alleged that at that time the said Maria was dead, having

died in April, 1890, leaving as her heirs her husband and a child now about six years old, and that these heirs were not parties to said proceedings.    Plaintiff demurred to the answer on the ground that it did not state facts sufficient to constitute a defense.    His Honor, Judge Benet, hearing the cause, sustained the demurrer, and made decree for foreclosure.    This decree, and the grounds of appeal therefrom, will be found set out in the report of this case.

The exceptions, in ultimate analysis, raise in general one controlling question, viz: whether the condition of said bond had been broken at the time of the commencement of this action?    As shown by the terms of the bond it was payable (1) within five years from its date, (2) or as soon before that time as the title to said premises shall, by a court of competent jurisdiction, be held or made good so far as the alleged defect alone is concerned. The action having been commenced within the five years, it remains to ascertain if a court of competent jurisdiction had, previous to the commencement of this action, held or made good said title.    The record in the case of *The Marine Wharf and Storage Company* v. *Catalina Zanoguera, the elder, Catalina Zanoguera, the younger, Elvina Zanoguera, Mary Zanoguera, Antonio Zanoguera, Madelina Zanoguera, Miguel Zanoguera, and Juanna Minie Zanoguera*, was made a part of the complaint, and was not questioned by defendant, except as hereinafter noticed, and shows on its face that the summons and complaint therein were duly and legally served by publication, and due proof of same made.    The Court of Common Pleas for the county of Charleston having power to hear and determine such a cause, having jurisdiction over the subject matter, and complying fully with the statute as to service of summons by publication, was a court of competent jurisdiction.    By its judgment, September 7th, 1895, it declared the proceedings in the said cause of Holmes, adm'r, v. Zanoguera "*to have been valid and binding,*" and proceeded further to confirm and ratify the same in all respects, and declared the title to

the property in question to be vested and validated in the plaintiff, &c. Defendant's title to the premises, as grantee of the plaintiff, was, therefore, held good on the 7th September, 1895, by a court of competent jurisdiction, when by its terms the bond became payable.

So far as the question before us is concerned, it makes no difference that it appears *de hors* the record that two of the Zanoguera heirs, Maria and Antonio, were dead at the time of the proceedings in 1895, Maria leaving a husband and infant child, who were not parties thereto; nor is it material that Juanna was under twenty-one years of age on the 30th July, 1895, when the affidavit was signed. It does not appear that she was not twenty-one years old at the commencement of the proceedings later in 1895, and the presumption is that she was. The judgment of Judge Buchanan, 7th September, 1895, was regular on its face. Nothing whatever appears in the record to impeach it. It is not void, and cannot be assailed collaterally, especially by defendant. *Darby* v. *Shannon*, 19 S. C., 526; *Hunter* v. *Ruff*, 47 S. C., 525. In reaching the conclusion that the proceedings, including the proof of service, on *all* the Zanoguera heirs, in the case of Holmes, adm'r, v. Zanoguera, to have been valid and binding, Judge Buchanan must have decided that the proof of service of the summons and complaint on the Zanoguera heirs, October 6, 1875, by the affidavit of Miguel Sbest before Ernesto Canut, United States consular agent, was a compliance with the statute, or that the proof of service was a mere irregularity, which was cured by the affidavit of July 30, 1895, filed with the record. In either view, his judgment was the judgment of a court of competent jurisdiction holding the title in question to be good. This being so, the bond became payable on the filing of this judgment.

Having reached this conclusion, we think it quite unnecessary to consider the other matters so ably and satisfactorily discussed in the opinion of Judge Benet.

We concur fully with the Circuit Court that the proceedings in the case of Holmes, adm'r, *v.* Zanoguera *et al.* were regular, valid, and binding on all the minor defendants therein.   It will be observed that the bond itself and the pleadings assume as true that Ernesto Canut *was a* consular agent of the United States in Majorca, Spain.  The alleged defect was that Ernesto Canut, though United States consul, was not authorized to administer the oath to the affidavit of Miguel Sbest, who served the minors. The Code, sec. 158, as it stood at that time, required that, in addition to publication, in the case of minors who could not be found within the State, service of summons and complaint should be made by delivering a copy thereof to the minor personally, and if under the age of fourteen years also to his or her father, mother or guardian, &c.   It further provided that proof of such personal service shall be made by affidavit of the party delivering the copy summons and complaint, properly authenticated.   An affidavit is defined in Am. & Eng. Enc. Law, vol. 1, p. 307, to be, "A formal written (or printed) voluntary *ex parte* statement, sworn (or affirmed) to before an officer authorized to take it, to be used in legal proceedings."   Unless a statute or rule of court otherwise requires, any one authorized to administer an oath may take an affidavit.   *Ib.*, p. 309.   In the absence of some statute or rule of court providing otherwise, proof of service on a non-resident may be made by affidavit taken before any officer qualified by law to take affidavits where the affidavit is made.   The officer's signature and seal is a sufficient authentication unless some statute or rule of court requires further authentication.   In this case, the affidavit contains all the requisites of an affidavit properly authenticated if Ernesto Canut, conceded to have been at the time a United States consul at Majorca, Spain, was qualified to administer such oath.   That he was so qualified under the laws of the United States is shown in Rev. Stat. U. S., ed. 1878, p. 311, wherein every consular agent is "authorized to administer to or take from any person any oath, affirmation,

affidavit or deposition, and to perform any notarial act which any notary public is required or authorized by law to do within the United States. Every such oath, affirmation, affidavit, deposition, and notarial act, administered, sworn, affirmed, taken out or done by or before any such officer, when certified under his hand and seal of office, shall be as valid and of like force and effect within the United States, to all intents and purposes, as if administered, sworn, affirmed, taken out or done by or before any other person within the United States duly authorized and competent thereto." This act was passed in 1856; was, therefore, in force when the provisions of the Code as to proof of service on non-residents was adopted, and we must assume the legislature had in mind the right of a United States consul to take an affidavit when this provision was adopted. In 1884, sec. 159 of the Code was amended, giving more specific directions as to the proof of service of process when made out of the State; and it is therein provided, "If (the service) is made without the limits of the United States (proof thereof may be made) before a consul or vice-consul or consular agent of the United States, who shall use in his certificate his official seal."

The case of *Woolfolk* v. *Graniteville Mfg. Co.*, 22 S. C., 337, cited in behalf of appellant, is not in conflict with the view here announced. In that case it was held that under our registry laws in force in 1820, a deed executed in South Carolina, and proved before a magistrate in Georgia, was not properly probated for record, because the act required such a deed to be probated "before a Judge of the Supreme Court, or a magistrate out of the Court." The Court held that these words "meant officers of this State, commissioned by this State, and acting within this State." In the case at bar, no officer was specified as the person who should take the affidavit.

If the proceedings in 1875 were not defective, it becomes unnecessary to consider what curative effect subsequent proceedings have thereon.

The judgment of the Circuit Court is affirmed.