24477

SOIL REMEDIATION COMPANY and Yadkin Brick Company, Inc., Plaintiffs v. NU-WAY ENVIRONMENTAL, INC., Petitioner v. CAROLINA EASTMAN DIVISION, A DIVISION OF EASTMAN KODAK COMPANY and Yeargin, Inc., Third-Party Defendants, Of whom Yeargin, Inc. is Respondent.

(476 S.E. (2d) 149)

Supreme Court

*Russell T. Burke* and *W. Leighton Lord, III*, both of *Nexsen, Pruet, Jacobs & Pollard, LLP*, Columbia, *for Petitioner.*

*Stephen E. Hudson*, of *Kilpatrick & Cody*, Atlanta, GA, *for Respondent.*

Heard Feb. 7, 1996.

Decided Aug. 12, 1996.

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

TOAL, Justice:

We granted Nu-Way Environmental, Inc.'s petition for writ of certiorari to review the decision of the Court of Appeals holding that the contract between the disputing parties satis-

fied statutory requirements as to arbitration. We affirm in result.

## FACTUAL/PROCEDURAL BACKGROUND

This is a contractual dispute between Yeargin, Inc. ("Yeargin") and Nu-Way Environmental, Inc. ("Nu-Way"). Yeargin moved before the circuit court to compel Nu-Way to arbitrate the dispute. The court ruled that the contract between the parties did not require arbitration, because it failed to meet the requirements of S.C. Code Ann. § 15-48-10 (Supp. 1995). Yeargin appealed the court's ruling; the Court of Appeals reversed, finding that the contract satisfied the statutory requirements. Nu-Way petitioned for a writ of certiorari, which this Court granted.

## LAW/ANALYSIS

Nu-Way argues the Court of Appeals erred in concluding that the contract between the parties satisfied the requirements of S.C. Code Ann. § 15-48-10.

Section 15-48-10(a) provides:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. *Notice that a contract is subject to arbitration pursuant to this chapter shall be typed in underlined capital letters, or rubber-stamped prominently, on the first page of the contract* and unless such notice is displayed thereon the contract shall not be subject to arbitration.

(Emphasis added.) The contract in the present case contained the following laser-printed notice provision at the top of the first page:

> THIS SUBCONTRACT IS SUBJECT TO ARBITRATION PURSUANT TO SECTION 15-48-10, CODE OF LAWS OF SOUTH CAROLINA (1976).

The Court of Appeals held that the above provision met the statutory requirements of "typed in underlined capital letters,

or rubber-stamped prominently." It reasoned that one of the definitions of "underline" is "to emphasize or cause to stand out," which was met under the present facts through the use of this capitalized notice provision. The opinion further stated that assuming the word "underlined" meant "to draw a line under" would lead to absurd results not intended by the Legislature. The Court of Appeals gave a number of examples which, although eye-catching, would fail the notice standards of section 15-48-10, because they were not underlined, typed on a typewriter, or rubber-stamped. Accordingly, it concluded that form should not be elevated over substance and that the provision in the present contract satisfied the purposes behind S.C. Code Ann. § 15-48-10. We disagree with the analysis of the Court of Appeals.

Where the terms of the statute are clear, the court must apply those terms according to their literal meaning. *Paschal v. State of S.C. Election Comm'n*, 317 S.C. 434, 454 S.E. (2d) 890 (1995). The terms of section 15-48-10 are: "Notice that a contract is subject to arbitration ... shall be *typed in underlined capital letters, or rubber-stamped prominently, on the first page of the contract* and unless such notice is displayed thereon the contract shall not be subject to arbitration." (Emphasis added.) The terms of the statute are clear; therefore, the court must apply those terms according to their literal meaning. As Chief Justice Howell observed in his dissent below, "By straining the imagination, even a 'bright line test' can be made to seem hopelessly irreconcilable with practical application. Legislative intent should not fall victim to such an exercise." He further wrote, while "strict construction of this statute may lead to results not intended by contracting parties, it is a matter for the legislature to act upon." We agree with this analysis.

Our conclusion is compelled not only by the unambiguous wording of section 15-48-10, but also by case law, which has strictly construed this provision. *See Osteen v. T.E. Cuttino Constr. Co.*, 315 S.C. 422, 424, 434 S.E. (2d) 281, 283 (1993) ("It is undisputed that the contract does not conform to the requirements of section 15-48-10(a)."[1]); *Timms v. Greene*, 310

---

[1] Although not described in the opinion, the arbitration provision, as revealed by the record, was not underlined, rubber-stamped, or on the first page of the contract.

S.C. 469, 472, 427 S.E. (2d) 642, 643 (1993) (Declaring that "the State Act is clear with regard to the notice requirement," the decision affirmed circuit court's finding that section 15-48-10 had not been satisfied, because the contract did not contain on its first page any mention of arbitration); *Circle S. Enters., Inc. v. Stanley Smith & Sons*, 288 S.C. 428, 343 S.E. (2d) 45 (Ct. App. 1986) (Arbitration provision was held not to be enforceable, because it failed to meet the section 15-48-10 requirement that notice appear on the first page of the contract.[2]).

Hence, the Court of Appeals erred in finding that the technical requirements of S.C. Code Ann § 15-48-10 had been satisfied. That, however, does not end the inquiry. Inextricably linked with the question of the applicability of section 15-48-10 is the impact of the Federal Arbitration Act ("FAA") on this dispute. In its appeal of the circuit court's order, Yeargin argued that even if the arbitration agreement were unenforceable under the state statute, it would be enforceable under federal law. We agree. Because the Court of Appeals held the arbitration agreement was enforceable, it did not reach the second issue of the applicability of federal law.

The FAA declares a liberal policy favoring arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed. (2d) 765 (1983). Section 2 of the Act states:

> A written provision in any maritime transaction or a contract evidencing a transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Recently, in *Doctor's Associates, Inc. v. Casarotto*, — U.S. —, 116 S.Ct. 1652, 134 L.Ed. (2d) 902 (1996), the United States Supreme Court interpreted this statute. In that

---

[2] The provision was also not underlined or rubber-stamped, as indicated by the record.

dispute, the Montana Supreme Court had held that an arbitration clause was unenforceable, because it did not meet the state law requirement that notice that the contract is subject to arbitration be "typed in underlined capital letters on the first page of the contract." Mont. Code Ann. § 27-5-114(4) (1995). The parties had a franchise agreement containing an arbitration clause, but the clause did not appear on the first page of the contract. On appeal, the United States Supreme Court declared, citing 9 U.S.C. § 2, that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of *any* contract." (Emphasis in original.) It wrote:

> [G]enerally applicable contrast defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2. Courts may not, however, invalidate arbitration agreements under state laws applicable *only* to arbitration provisions. By enacting § 2, we have several times said, Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed "upon the same footing as other contracts." Montana's § 27-5-114(4) directly conflicts with § 2 of the FAA because the State's law conditions the enforceablity of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally. The FAA thus displaces the Montana statute with respect to arbitration agreements covered by the Act.

*Casarotto,* — U.S. at —, 116 S.Ct. at 1653 (citations omitted) (emphasis in original).

If the arbitration agreement in the instant controversy is covered by the FAA, then *Casarotto* directly controls, and the FAA preempts S.C. Code Ann. § 15-48-10(a). The South Carolina statute is nearly identical to the Montana statute. The only difference is that in addition to allowing notice through underlined capital letters, section 15-48-10(a) allows the notice to be "rubber-stamped." Because section 15-48-10(a) singles out arbitration agreements, it directly conflicts with section 2 of the FAA. The FAA therefore displaces the statute, if the agreement is covered by the Act.

For the Federal Act to apply, the commerce involved in the contract must be interstate or foreign. *Timms*, 310 S.C. 469, 427 S.E. (2d) 642. Thus, we must determine whether the contract giving rise to the transaction between the parties involves interstate commerce. "Commerce" is defined as "commerce among the several States or with foreign nations. . . ." 9 U.S.C. § 1; *Mathews v. Fluor Corp.*, 312 S.C. 404, 407, 440 S.E. (2d) 880, 881 (1994) ("Commerce, as defined in the Act, evidences transactions involving interstate or foreign commerce."). The court must examine the agreement, the complaint, and the facts to ascertain whether the transaction is one involving commerce within the meaning of the Act. *Mathews*, 312 S.C. at 404, 440 S.E. (2d) at 881.

Evidence of transactions in interstate commerce was held to be present in *Episcopal Housing Corp. v. Federal Ins. Co.*, 269 S.C. 631, 239 S.E. (2d) 647 (1977), wherein contract documents relating to the construction of a housing project contained clear references to equipment and materials to be furnished from outside South Carolina. Likewise in *Circle S. Enters.*, 288 S.C. 428, 343 S.E. (2d) 45, the Court of Appeals concluded that construction of an auto-truck stop involved interstate commerce, as indicated by the nature of the project and by the fact that numerous items specified in the contracts were purchased and shipped from outside South Carolina.

In contrast, *Mathews*, 312 S.C. 404, 440 S.E. (2d) 880, held that a contractual dispute involving the sale of real estate situated in South Carolina did not involve interstate commerce where, despite the fact the contracting parties were domiciled outside of South Carolina, there was no nexus between the contract and interstate commerce. Likewise in *Timms*, 310 S.C. 469, 427 S.E. (2d) 642, this Court held that a personal injury action in which plaintiff sought damages for injuries occurring while she was left unattended under a hair dryer at a health care center, did not implicate a transaction involving interstate commerce. *Timms* distinguished *Episcopal Housing Corp.* and *Circle S. Enters.* on the grounds that both concerned "construction contracts clearly predicated upon transactions involving the purchase and use of materials and supplies from outside the state." *Timms*, 310 S.C. at 469, 427 S.E. (2d) at 643-44.

In the present case, the contractual agreement at issue involves interstate commerce. Nu-Way concedes that the object of the contract between Yeargin and itself was the removal and disposal of water and sludge materials located on property situated in South Carolina. Nu-Way subcontracted with a third party for the disposal of the materials, which were to be transported to a North Carolina facility. Thus, there is a nexus between the contract and interstate commerce. The present case differs from *Mathews* and *Timms* in that the transaction is not confined to this state, but involves the transport of materials from South Carolina to another state.

The presence of interstate commerce makes the FAA applicable to the present arbitration agreement. Hence, under *Casarotto*, the FAA preempts S.C. Code Ann. § 15-48-10(a).

## CONCLUSION

Based on the foregoing, the decision of the Court of Appeals is AFFIRMED IN RESULT.

FINNEY, C.J., and MOORE, WALLER and BURNETT, JJ., concur.