539 S.E.2d 62
**Leatrice Williams COLLINS, Appellant,**

v.

**John DOE, Respondent.**

**No. 3250.**

Court of Appeals of South Carolina.

Submitted Sept. 11, 2000.

Decided Oct. 9, 2000.

Rehearing Denied Jan. 8, 2001.

Ronnie A. Sabb, of Kingstree, for appellant.

Harry C. Wilson, Jr., of Lee, Erter, Wilson, Holler & Smith, of Sumter, for respondent.

HUFF, Judge:

Leatrice Williams Collins appeals from the trial court's grant of a directed verdict in favor of unknown motorist John Doe. The trial court held Collins failed to meet the requirement of the uninsured motorist statute, South Carolina Code Annotated Section 38–77–170 (Supp.1999). We reverse and remand.

## FACTS

Collins was injured in an automobile accident on March 11, 1994. According to Collins, she was traveling north on Highway 301 when a car traveling on Highway 521 failed to yield the right of way where Highway 521 intersects with Highway 301. Collins swerved into the lane of oncoming traffic to avoid the car. Because a truck was heading towards her, she swerved back into her original lane, sideswiping a car driven by Joanne Calvin. The car that failed to yield the right of way did not stop.

Collins filed this action against John Doe, the unknown driver of the unidentified vehicle pursuant to Section 38–77–170. She alleged Doe's failure to yield the right of way and other acts of negligence, carelessness, and recklessness caused her collision with Calvin.

At trial, Collins called Roberta Briggs, Calvin's sister, as a witness. Briggs testified that while she was walking she saw Calvin and waved at her so that she could catch a ride. Calvin stopped to make a left turn to pick her up. Briggs stated she saw a light-colored car fail to stop at the yield sign and keep going. The light-colored car passed Calvin on the right, hitting the sidewalk. Briggs saw Collins swerve out of her lane and try to pass Calvin's car on the driver's side. Briggs testified that when Collins was not able to get around because of oncoming traffic, she pulled back and hit Calvin's car. On cross-examination, she testified Collins was traveling fast.

Collins also called Calvin as a witness. Calvin testified she was coming off of Highway 521 at the Highway 301 intersection when she stopped for her sister. She stated the car traveling behind her on Highway 521 ran Collins's car into the other lane. Calvin stated Collins had to hit her to avoid a head-on collision with a truck. On cross-examination, she testified she did not see Collins's car until it hit her.

After Collins rested her case, Doe moved for a directed verdict arguing that Collins's failure to produce an affidavit of a witness to the accident as required by Section 38–77–170 rendered her unable to recover under the statute. The trial court granted the motion. This appeal followed.

### DISCUSSION

██ Collins argues the trial court erred in granting Doe's motion for directed verdict. She asserts that although she did not present the affidavit of a witness to the accident, the witnesses' trial testimony satisfied the statutory requirements. We agree.

Section 38–77–170 provides:

If the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured is unknown, there is no right of action or recovery under the uninsured motorist provision, unless:

(1) the insured or someone in his behalf has reported the accident to some appropriate police authority within a reasonable time, under all the circumstances, after its occurrence;

(2) the injury or damage was caused by physical contact with the unknown vehicle, or the accident must have been witnessed by someone other than the owner or operator of the insured vehicle; provided however, the witness must sign an affidavit attesting to the truth of the facts of the accident contained in the affidavit;

(3) the insured was not negligent in failing to determine the identity of the other vehicle and the driver of the other vehicle at the time of the accident.

The following statement must be prominently displayed on the face of the affidavit provided in subitem (2) above: A FALSE STATEMENT CONCERNING THE FACTS CONTAINED IN THIS AFFIDAVIT MAY SUBJECT THE PERSON MAKING THE FALSE STATEMENT TO CRIMINAL PENALTIES AS PROVIDED BY LAW.

██ The primary concern in interpreting a statute is to determine the intent of the legislature if it reasonably can be discovered in the language when construed in the light of its intended purpose. *Whitner v. State,* 328 S.C. 1, 492 S.E.2d 777 (1997); *Singletary v. South Carolina Dep't of Educ.,* 316 S.C. 153, 447 S.E.2d 231 (Ct.App.1994). "However plain the ordinary meaning of the words used in a statute may be, the courts will reject that meaning when to accept it would lead to a result so plainly absurd that it could not possibly have been

intended by the Legislature or would defeat the plain legislative intention." *Kiriakides v. United Artists Communications, Inc.,* 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994). The uninsured motorist statutes are remedial in nature and enacted for the benefit of the injured persons. They are to be liberally construed so that the purpose may be accomplished. *Gunnels v. American Liberty Ins. Co.,* 251 S.C. 242, 161 S.E.2d 822 (1968); *Franklin v. Devore,* 327 S.C. 418, 489 S.E.2d 651 (Ct.App.1997).

In a case such as this where there was no contact with the unknown vehicle, the plain language of Section 38–77–170 requires the filing of an affidavit by a corroborating witness. An affidavit is a "voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths." *Black's Law Dictionary* 58 (7th ed. 1999). In requiring the witness to sign an affidavit attesting to the truth of the facts of the accident, the legislature intended to preclude false statements by making such a false statement subject to criminal laws. Testimony at trial is obviously taken under oath. Giving false testimony at trial constitutes the felony of perjury and subjects the perjurer to a fine and/or up to five years imprisonment. S.C.Code Ann. § 16–9–10 (Supp.1999). Although Section 38–77–170 does not specifically provide for sworn testimony as a substitute for an affidavit, we find such testimony fulfills the legislature's intent. To hold otherwise would elevate form over substance. *See South Carolina Second Injury Fund v. American Yard Products,* 330 S.C. 20, 496 S.E.2d 862 (1998), *citing Liberty Mut. Ins. Co. v. South Carolina Second Injury Fund,* 318 S.C. 516, 518, 458 S.E.2d 550, 551 (1995) ("[t]he real purpose of the legislature will prevail over the literal import of the words.").

Accordingly, we find the trial court erred in holding Collins' claim must fail as a matter of law because she failed to provide affidavits by her corroborating witnesses.

John Doe asserts that even if this court holds Collins satisfied Section 38–77–170, he is still entitled to a directed verdict because Collins did not produce witnesses to establish John Doe caused the accident. We disagree.[1]

---

**1.** *See I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 526 S.E.2d 716 (2000) (holding appellate court may address issue the lower court did

When reviewing the denial of a motion for directed verdict, this court, like the trial court, must consider the evidence in the light most favorable to the non-moving party. *Brady Dev. Co. v. Town of Hilton Head Island,* 312 S.C. 73, 439 S.E.2d 266 (1993). A directed verdict should not be granted unless only one reasonable inference can be drawn from the evidence. *Horry County v. Laychur,* 315 S.C. 364, 434 S.E.2d 259 (1993). When considering the motion, neither this court nor the trial court has authority to decide credibility issues or to resolve conflicts in the testimony and evidence. *Garrett v. Locke,* 309 S.C. 94, 419 S.E.2d 842 (Ct.App.1992).

Briggs testified that she saw a light colored car fail to yield to Collins and she saw Collins swerve out of her lane and then sideswipe Calvin's car. On cross-examination, she stated Collins was traveling too fast to stop. Calvin also testified an unknown car failed to yield and ran Collins out of her lane. On cross-examination, however, Calvin admitted she did not see Collins until the impact. The testimony by these witnesses verifies the existence of an unknown vehicle driven by an unknown driver that failed to yield the right-of-way. It is a question for the jury as to the weight to assign the testimony and whether John Doe's negligence or Collins's own negligence caused the accident.

The decision of the lower court is **REVERSED** and the case **REMANDED.**

ANDERSON, J., concurs.

GOOLSBY, J., dissents in a separate opinion.

GOOLSBY, Judge (dissenting):

I respectfully dissent. I would affirm, believing as did the trial judge, that the absence of the affidavit mandated by the South Carolina General Assembly in South Carolina Code section 38–77–170 required him to direct a verdict against the appellant Leatrice Williams Collins.[1]

Section 38–77–170 provides in pertinent part:

---

not rule on where the issue is raised as an additional sustaining ground).

**1.** When granting respondent John Doe's motion for a directed verdict, the trial judge stated:

If the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured is unknown, there is no right of action or recovery under the uninsured motorist provision, unless:

(1) the insured or someone in his behalf has reported the accident to some appropriate police authority within a reasonable time, under all the circumstances, after its occurrence;

(2) the injury or damage was caused by physical contact with the unknown vehicle, or the accident must have been witnessed by someone other than the owner or operator of the insured vehicle; provided however, the witness must sign an affidavit attesting to the truth of the facts of the accident contained in the affidavit;

. . .

The following statement must be prominently displayed on the face of the affidavit provided in subitem (2) above: A FALSE STATEMENT CONCERNING THE FACTS CONTAINED IN THIS AFFIDAVIT MAY SUBJECT THE PERSON MAKING THE FALSE STATEMENT TO CRIMINAL PENALTIES AS PROVIDED BY LAW.[2]

Here, there is no sworn statement in writing, which is what an "affidavit" is.[3] Absent also is the mandated signature of a

---

I feel I am compelled to apply the plain language of the statute. While in my mind the sworn testimony of a witness in court is the equivalent of an affidavit from the standpoint of reliability, that is not what the statute clearly requires[.] I feel that I must give effect to the plain language of the legislature. *This court cannot legislate.* [I]f that is not what the legislature had intended and if they had intended that sworn testimony in court would be sufficient, [it] very clearly could have put that in the statute or the statute could be amended to that effect.

I feel like that while that testimony is just as reliable as an affidavit might be, there may be other reasons that the legislature chose not to include that in the statute. . . . *I think it's clearly a matter for the legislature which I cannot do.*

(Emphasis added).

**2.** S.C.Code Ann. § 38–77–170 (Supp.1999) (Underscored emphasis added).

**3.** *See State v. McKnight,* 291 S.C. 110, 113, 352 S.E.2d 471, 472 (1987) ("An affidavit is a voluntary ex parte statement reduced to writing and sworn to or affirmed before some person legally authorized to adminis-

witness on an affidavit "attesting to the truth of the facts of the accident." Moreover, the mandated warning concerning false statements appears nowhere "on the face of [an] affidavit." Collins in no way complied with any of the express commands of the statute in question, as easy as they are to be understood and observed.

In interpreting a statute, we, as appellate judges, are to give effect to the language used by the legislature,[4] especially if, as here, the statute's language is plain and unambiguous.[5] To do that means we can only hold that the requirement of a certain affidavit, with prescribed language printed in a particular way and appearing prominently on the face of the affidavit, does not include a witness' mere testimony given in court under

---

ter an oath or affirmation."); *Marine Wharf & Storage Co. v. Parsons,* 49 S.C. 136, 157, 26 S.E. 956, 966 (1897) (An affidavit is "a formal written (or printed) voluntary ex parte statement sworn (or affirmed) to before an officer authorized to take it, to be used in legal proceedings."); *see also Youngker v. State,* 215 So.2d 318 (Fla.Dist.Ct.App.1968) (defining an affidavit as a statement in writing under oath administered by a duly authorized person); *American Heritage Dictionary* 84 (1982) (defining an affidavit as a "written declaration made under oath before a notary public or other authorized officer").

**4.** *See Chestnut v. South Carolina Farm Bureau Mut. Ins. Co.,* 298 S.C. 151, 378 S.E.2d 613 (Ct.App.1989) (wherein the court of appeals applied the plain-meaning rule to section 38–77–170 as the statute existed prior to its amendment in 1989).

**5.** *See Jones v. South Carolina State Highway Dep't,* 247 S.C. 132, 136, 146 S.E.2d 166, 168 (1966) ("The first rule of construction in the interpretation of statutes is that of intention on the part of the legislature and where the terms of a statute are clear and not ambiguous, there is no room for construction, and courts must apply them according to their literal meaning.... There is no safer nor better rule of interpretation than that when language is clear and unambiguous it must be held to mean what it plainly says."); *see also McKnight,* 291 S.C. at 113, 352 S.E.2d at 473 (In holding that oral sworn testimony failed to satisfy the requirements of a statute that required an affidavit, the supreme court stated: "The mandate of the statute is clear. The Court cannot, under the guise of statutory interpretation, overlook [the] plain meaning of the statute to imply instead a wholly different meaning than was intended by the legislature."); *Martin v. Ellisor,* 266 S.C. 377, 223 S.E.2d 415 (1976) ("When ... [a] statute is plain and unambiguous, it becomes the duty of the court to apply it literally because the legislative design is unmistakable.... This rule of literal application may be forced to yield, but only when its application would produce an absurd result.").

oath.[6]

As to any suggestion that to disallow in-court testimony under oath is to elevate form over substance, I can only say that the technical requirement of a signed affidavit containing on its face certain prescribed language is not a mere matter of form; rather, it is one of substance.[7]  Indeed, it is an express element of the right of action itself.[8]  The legislature has said there *must* be a signed affidavit with certain language that *must* appear prominently on its face and, if one is not provided, "there is no right of action or recovery."[9]  If the legisla-

6. *Cf. McKnight,* 291 S.C. at 113, 352 S.E.2d at 472–73 (holding that oral sworn statements were not sufficient where search warrant statute required affidavit); *United States v. Birrell,* 242 F.Supp. 191 (S.D.N.Y. 1965) (holding sworn information presented to a commissioner other than that contained in affidavits could not be considered where rule of criminal procedure provided that a warrant shall issue only on affidavit sworn to before a judge or commissioner as the word affidavit referred to a sworn statement in writing made especially under oath); *Powelson v. Superior Court,* 9 Cal.App.3d 357, 88 Cal.Rptr. 8 (1970) (holding oral sworn statements not an affidavit within a statute requiring sworn statements to be contained in an affidavit before a search warrant could be issued).

7. *See Soil Remediation Co. v. Nu–Way Envtl., Inc.,* 323 S.C. 454, 476 S.E.2d 149 (1996) (wherein the supreme court noted the conclusion of the court of appeals that "form should not be elevated over substance" applied the plain-meaning rule of statutory construction to hold that the unambiguous wording of the arbitration statute required notice that a contract is subject to arbitration be typed in underlined capital letters or rubber-stamped on the contract's first page, and found that the technical requirements of the statute were not met where the arbitration notice on the contract was not underlined); *Criterion Ins. Co. v. Hoffmann,* 258 S.C. 282, 292, 188 S.E.2d 459, 463 (1972) (wherein the supreme court stated, construing a prior version of the uninsured motorist law, "the procedural obligations that the insured must discharge in order to recover, since they are prescribed by statute, are viewed by the courts as mandatory, and strict compliance with them is a prerequisite to recover").

8. S.C.Code Ann. § 38–77–170 (Supp.1999).

9. *See Criterion,* 258 S.C. at 290, 188 S.E.2d at 462 ("Except for the statute, and endorsements required, no right exists to recover from one's own insurance carrier.  One must look to the terms of the uninsured motorist statute and policy endorsements and comply therewith to get the benefit of the law. . . .  It is the province of the lawmakers to create a right of action, to provide for process and to

ture had deemed the in-court testimony of a witness under oath a proper substitute for the particular type of affidavit required by section 38–77–170, then the legislature would have said so in plain and unambiguous language.

I would affirm.

declare the procedure for collecting from one's own insurance carrier. They did just that.'').