524 S.E.2d 839

**Winfield C. TOWLES, M.D., Respondent,**

v.

**UNITED HEALTHCARE CORPORATION, Physicians Health Plan, Inc., William E. Martin, Rebecca Estefano, and Cheryl Parrott, Appellants.**

**No. 3077.**

Court of Appeals of South Carolina.

Heard Oct. 7, 1999.

Decided Nov. 22, 1999.

30

Vance J. Bettis, of Gignilliat, Savitz & Bettis; J. Lewis Cromer, of Cromer & Mabry; and Ernest J. Nauful Jr., of Ernest J. Nauful, P.C., all of Columbia, for appellants.

Frederick A. Gertz and Benjamin L. Sadler, III, both of Gertz & Moore, of Columbia, for respondent.

HEARN, Judge:

United HealthCare Corporation (United) appeals from a circuit court order denying United's motion to compel arbitration. We reverse.

## FACTS

United is a nationwide company headquartered and incorporated in Minnesota which maintains offices, corporate subsidiaries, HMO's, and managed health plans under management contracts throughout the United States. In South Carolina, United provides managerial and other related services for the South Carolina corporation, Physician's Health Plan (PHP). Winfield C. Towles began working as a medical director for United in September 1995 and was assigned to PHP.[1]

In February 1996, Towles signed a Code of Conduct and Employee Handbook Acknowledgment form (the Acknowledgment). The Acknowledgment stated that "the provisions in

---

1. Towles submitted an affidavit asserting he worked as a medical director for PHP rather than United. However, United issued Towles's employment confirmation letter and Towles's complaint stated he "was hired as an employee of [United] as the management company for PHP in September 1995." Nothing in the record indicates Towles amended his complaint. Therefore, Towles is bound by his pleadings. *See Skull Creek Club Ltd. Partnership v. Cook and Book, Inc.*, 313 S.C. 283, 289, 437 S.E.2d 163, 166 (Ct.App.1993) ("It is well settled that parties are judicially bound by their pleadings unless withdrawn, altered or stricken by amendment or otherwise." (quoting *Postal v. Mann*, 308 S.C. 385, 387, 418 S.E.2d 322, 323 (Ct.App.1992))).

this Handbook are guidelines and, except for the provisions of the Employment Arbitration Policy, do not establish a contract or any particular terms or condition of employment between myself and [United]." The Employment Arbitration Policy, which is summarized in the Acknowledgment and employee handbook, stated in part: "Arbitration is the final, exclusive and required forum for the resolution of all employment related disputes which are based on a legal claim."

In September 1996, United terminated Towles. According to Towles, a former co-worker subsequently told an employee of a different hospital that United terminated Towles for sexual harassment.

Towles then sued United, PHP, PHP's president, and two co-workers alleging defamation, conspiracy, negligent supervision, wrongful discharge, unfair or deceptive trade practices, and reckless or intentional infliction of emotional distress. In response, United filed a motion to dismiss, or in the alternative, a motion to compel arbitration. The circuit court denied United's motion to dismiss. The circuit court also denied United's motion to compel arbitration "with leave to refile it after completing discovery in this action." United appeals, contending the circuit court erred in denying United's motion to compel arbitration under the Federal Arbitration Act (FAA). *See* 9 U.S.C.A. § 1 et seq. (1999).

## DISCUSSION

We must initially determine whether United may appeal from the circuit court's order. United contends the circuit court's order is appealable under both federal and state law. We agree.

■ Both federal and state policy favor arbitrating disputes. *Heffner v. Destiny, Inc.,* 321 S.C. 536, 537, 471 S.E.2d 135, 136 (1995) ("The policy of the United States and this State is to favor arbitration of disputes."). This preference for arbitration has manifested itself in legislation and judicial decisions supporting the expeditious appeal of decisions denying an application to compel arbitration.

The FAA states: "An appeal may be taken from ... an order ... denying an application under section 206 of this title to compel arbitration." 9 U.S.C.A. § 16(a)(1)(C) (1999). Enacting this provision revealed Congress's "deliberate determi-

nation that appeal rules should reflect a strong policy favoring arbitration." *Stedor Enter., Ltd. v. Armtex, Inc.*, 947 F.2d 727, 730 (4th Cir.1991) (quoting 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3914.34, at 412 (Supp.1990)).

■ South Carolina's statutory law provides a similar framework. South Carolina's Uniform Arbitration Act states: "[a]n appeal may be taken from ... [a]n order denying an application to compel arbitration made under § 15–48–20." S.C.Code Ann. § 15–48–200(a)(1) (Supp.1998). Therefore, "an order that favors litigation over arbitration—whether it refuses to stay the litigation in deference to arbitration; refuses to compel arbitration; ... or grants, continues, or modifies an injunction against arbitration—is immediately appealable, *even if interlocutory.*" *Stedor*, 947 F.2d at 730 (emphasis added).

■ The circuit court's order stated: "[D]efendants' motion to compel arbitration is denied, at this time, with leave to refile it at the completion of discovery in this action." The circuit court's order favored litigation over arbitration by refusing to compel arbitration until the parties conducted additional discovery. Therefore, United may appeal the circuit court's order denying its motion to compel arbitration. *See* 9 U.S.C.A. § 16(a)(1)(C) (1999); S.C.Code Ann. § 15–48–200(a)(1) (Supp.1998); *Stedor*, 947 F.2d at 730.

Having concluded the circuit court's order is appealable, we now address United's contention that the circuit court erred in denying United's motion to compel arbitration under the FAA. To analyze United's contention we must evaluate (1) whether the FAA applies, (2) whether United and Towles formed a valid and binding arbitration agreement, and (3) whether the agreement covers Towles's claims.

## I.

■ For the FAA to apply, an agreement must "evidenc[e] a transaction involving commerce," specifically interstate commerce.[2] 9 U.S.C.A. § 2 (1999); *see also Soil Remed-*

---

2. For the purpose of determining whether the FAA applies, we assume an agreement existed between Towles and United. Whether an agreement actually existed is discussed in section II of this opinion.

*iation Co. v. Nu–Way Envtl., Inc.,* 323 S.C. 454, 460, 476 S.E.2d 149, 152 (1996). The terms "involving commerce" amount to the functional equivalent of "affecting commerce" and signal "an intent to exercise Congress' commerce clause power to the full." *Allied–Bruce Terminix Co. v. Dobson,* 513 U.S. 265, 277, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); *see also Mathews v. Fluor Corp.,* 312 S.C. 404, 407, 440 S.E.2d 880, 881 (1994) ("The requirement that the underlying transaction involve commerce is to be broadly construed so as to be coextensive with congressional power to regulate under the Commerce Clause."). The phrase "evidencing a transaction" only requires "that the 'transaction' in fact 'involv[e]' interstate commerce, even if the parties did not contemplate an interstate commerce connection." *Allied–Bruce Terminix Co.,* 513 U.S. at 277–81, 115 S.Ct. 834. To ascertain whether a transaction involves commerce within the meaning of the FAA, the court must examine the agreement, the complaint, and the surrounding facts. *Soil Remediation Co.,* 323 S.C. at 460, 476 S.E.2d at 152.

■ Towles's responsibilities included helping to establish medical policy, overseeing utilization review and quality management for plan participants, attending out of state conferences, participating in telephone conferences with United's corporate medical affairs staff in Minnesota, and reviewing claims from out-of-state providers and specialty providers located in North Carolina and Georgia. Towles participated in sales presentations in South Carolina and Georgia and worked with officials from national companies in resolving questions of utilization review and medical necessity for PHP participants. Towles also reviewed proposals for services from out-of-state medical and ancillary service providers. We find Towles's activities provide sufficient evidence of interstate commerce to invoke the FAA. *See Allied–Bruce Terminix Co.,* 513 U.S. at 277, 115 S.Ct. 834 (noting the FAA signaled Congress's intent to exercise its Commerce Clause powers to the full).

Because interstate commerce is involved, the FAA applies and displaces South Carolina's Uniform Arbitration Act. *See Soil Remediation Co.,* 323 S.C. at 459–60, 476 S.E.2d at 152 (noting the FAA preempts South Carolina's Uniform Arbitration Act). Therefore, if an arbitration agreement which covers Towles's claims exists, the FAA requires arbitration.

## II.

United contends the Acknowledgment created a valid, binding agreement requiring arbitration. We agree.

 Arbitration is available only when the parties involved contractually agree to arbitrate. *General Drivers, Warehousemen and Helpers Local Union No. 509 v. Ethyl Corp.*, 68 F.3d 80, 83 (4th Cir.1995). There is a strong presumption in favor of the validity of arbitration agreements because of the strong policy favoring arbitration. *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 273 (4th Cir.1997); *Heffner*, 321 S.C. at 537, 471 S.E.2d at 136. In determining whether an agreement to arbitrate exists, "the court should apply 'ordinary state-law principles that govern the formation of contracts.'" *Johnson v. Circuit City Stores*, 148 F.3d 373, 377 (4th Cir.1998) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)); *see also Arrants v. Buck*, 130 F.3d 636, 640 (4th Cir.1997) ("Courts decide whether there is an agreement to arbitrate according to common law principles of contract law.").

Towles contends he never received actual notice of the arbitration provisions thus precluding him from assenting to arbitration. Accordingly, Towles argues the Acknowledgment failed to create a binding arbitration agreement. Towles cites *Fleming v. Borden, Inc.*, 316 S.C. 452, 450 S.E.2d 589 (1994) for the proposition that an employee handbook constitutes a binding contract only when the employee has actual notice of the provisions in the handbook and a jury should decide whether an employee received actual notice. We find Towles's reliance on *Fleming v. Borden* is misplaced for at least two reasons.

First, the *Fleming* case does not focus on the need for actual notice when an employee handbook creates an employment contract, but rather holds that an employee must receive actual notice when an employer modifies an existing employee handbook. *Id.* at 460–3, 450 S.E.2d at 594–6. Second, although a jury normally decides whether a contract exists when there is conflicting evidence, in the present case, we find the evidence leaves room for only one inference: that the Ac-

knowledgment constituted a binding arbitration agreement.[3] *See Small v. Springs Indus., Inc.*, 292 S.C. 481, 483, 357 S.E.2d 452, 454 (1987) (noting "a trial court should submit to the jury the issue of existence of a contract when its existence is questioned and the evidence is either conflicting or admits of more than one inference").

Most employment contracts are unilateral. *Prescott v. Farmers Tel. Coop., Inc.*, 335 S.C. 330, 516 S.E.2d 923 (1999). "A unilateral contract has the following three elements: 1) a specific offer, 2) communication of the offer to the employee, and 3) performance of job duties in reliance on the offer." *Id.* at 336, 516 S.E.2d at 926. There is no mutuality of obligation in a unilateral contract; there is only one promisor and one promisee for whom the contract creates a legally enforceable right. *Fleming*, 316 S.C. at 460–1, 450 S.E.2d at 594.

---

3. We note that under South Carolina's Uniform Arbitration Act, the court, rather than the jury, determines whether a valid arbitration agreement exists. S.C.Code Ann. § 15–48–20(a) (Supp.1998); *see also H.L. Libby Corp. v. Skelly and Loy, Inc.*, 910 F.Supp. 195, 197–8 (M.D.Pa.1995) (noting that under Pennsylvania's Uniform Arbitration Act, a provision nearly identical to South Carolina's provision, the court, rather than the jury, determines whether an arbitration agreement existed).

Under the FAA, a party resisting arbitration may request a jury trial to resolve whether an arbitration agreement exists, but "[a] party to an arbitration agreement cannot obtain a jury trial merely by demanding one." *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir.1992); *see also* 9 U.S.C.A. § 4 (1999) (stating the party alleged to be in default may demand a jury trial when the making of the arbitration agreement is at issue). A jury trial on the existence of an arbitration agreement is warranted when there are genuine issues of material fact regarding the parties' agreement. *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir.1997). The party resisting arbitration bears the burden of showing an entitlement to a jury trial under the FAA and must produce some evidence to substantiate the allegations that the prevailing law would release him from a contractual obligation to arbitrate. *Dillard*, 961 F.2d at 1154.

We conclude it was unnecessary to submit to the jury the issue of whether an arbitration agreement existed. First, it is not clear whether these procedural rules, which explicitly reference United States District Courts, apply to state trial courts. Second, even if the provisions apply to the circuit court, we find the evidence admits of only one inference: that Towles and United formed a binding arbitration agreement thus rendering a jury trial on the issue of whether an arbitration agreement existed improper.

Towles signed the Acknowledgment which provided in pertinent part:

I acknowledge that I have received a copy of the United HealthCare Corporation (UHC) code of Conduct and the Employee Handbook. I understand that these documents contain important information on UHC's general personnel policies and on my obligations as an employee. I will remain familiar with, and agree to abide by these policies.

\* \* \*

*At–Will Employment*

I understand that the provisions in this Handbook are guidelines and, except for the provisions of the Employment Arbitration Policy, do not establish a contract or any particular terms or condition of employment between myself and [United].

\* \* \*

I understand that arbitration is the final, exclusive and required forum for the resolution of all employment related disputes which are based on a legal claim. I agree to submit all employment related disputes based on a legal claim to arbitration under [United's] policy.

▇▇ After receiving and signing the Acknowledgment, Towles cannot legitimately claim United failed to provide actual notice of the arbitration provisions because the law does not impose a duty to explain a document's contents to an individual when the individual can learn the contents from simply reading the document. *Citizens and Southern Nat'l Bank v. Lanford,* 313 S.C. 540, 545, 443 S.E.2d 549, 551 (1994); *Burwell v. South Carolina Nat'l Bank,* 288 S.C. 34, 39, 340 S.E.2d 786, 789 (1986)(noting that "every contracting party owes a duty to the other party to the contract and to the public to learn the contents of a document before he signs it"); *see also First Baptist Church of Timmonsville v. George A. Creed & Son, Inc.,* 276 S.C. 597, 599, 281 S.E.2d 121, 123 (1981) (holding that "in the absence of a showing of fraud, mistake, unfair dealing or the like, a party to a contract incorporating an arbitration provision cannot escape the obli-

gation of such a provision by simply declaring: 'But I did not read the whole agreement.' ").

 We find the Acknowledgment constituted a specific communication of an offer which conditioned Towles's continued employment on his acceptance of the Employment Arbitration Policy as part of his employment contract. *See Prescott, supra,* (noting a unilateral contract requires a specific offer communicated to the employee). Towles accepted the offer by continuing in his employment.[4] *See Small,* 292 S.C. at 484, 357 S.E.2d at 454 (finding an employee accepted employer's offer "by performing the act on which the promise was impliedly or expressly based"). Therefore, we find the evidence leaves room for only one inference: the Acknowledgment constituted a binding arbitration agreement. *See Small* 292 S.C. at 483, 357 S.E.2d at 454 (noting "a trial court should submit to the jury the issue of existence of a contract when its existence is questioned and the evidence is either conflicting or admits of more than one inference").

A recent decision by the Alabama Supreme Court analyzing an identical acknowledgment form supports our conclusion. *See Ex parte McNaughton,* 728 So.2d 592 (Ala.1998). In *McNaughton,* United HealthCare Services issued an acknowledgment form containing identical language to the Acknowledgment in the present case. *Id.* at 595. The Alabama Supreme Court held the signed acknowledgment form created a binding contract to arbitrate employment disputes even though, as here, the employee constituted an at-will employee. *McNaughton,* 728 So.2d at 594–6.

4. Although Towles does not raise the issue, we note Towles's continued employment constituted sufficient consideration to render the Acknowledgment legally binding. *See Small,* 292 S.C. at 484, 357 S.E.2d at 454 (holding an employee's "action or forbearance in reliance on [employer's] promise was sufficient consideration to make the promise legally binding"); *Riedman Corp. v. Jarosh,* 290 S.C. 252, 253, 349 S.E.2d 404, 405 (1986) (holding at-will employment constitutes sufficient consideration to support a covenant not to compete); *see also O'Neil,* 115 F.3d at 274–5 (holding a mutual promise to arbitrate constituted sufficient consideration to enforce an arbitration agreement where the employer proffered, and the employee signed, an employee handbook and acknowledgment form over three and one-half years after employment began).

Having concluded a binding arbitration agreement existed, we now address whether the arbitration agreement covered Towles's claims.

## III.

United contends the arbitration agreement's coverage extends to Towles's claims. We agree.

 Determining whether a party agreed to arbitrate a particular dispute is an issue for judicial determination to be decided as a matter of contract.[5] *Johnson,* 148 F.3d at 377. An arbitration clause is a contractual term, and general rules of contract interpretation must be applied to determine a clause's applicability to a particular dispute. *Zandford v. Prudential–Bache Sec., Inc.,* 112 F.3d 723, 727 (4th Cir.1997). When a party invokes an arbitration clause after the contractual relationship between the parties has ended, the parties' intent governs whether the clause's authority extends beyond the termination of the contract. *Zandford,* 112 F.3d at 727.

 We must address questions of arbitrability with a healthy regard for the federal policy favoring arbitration. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), *cited in Johnson,* 148 F.3d at 377. Therefore, " 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.' " *O'Neil,* 115 F.3d at 273–4 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–5, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)); *see also Johnson,* 148 F.3d at 377. Motions to compel arbitration should not be denied unless the arbitration clause is not

---

**5.** The arbitrator, rather than the court, determines whether an issue is arbitrable "only if the contract ... clearly evinces an intent for the arbitrator to make the decision." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Havird,* 335 S.C. 642, 646, 518 S.E.2d 48, 50 (1999) (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). The court resolves the arbitrability issues when no such intent can be reasonably gleaned from the arbitration agreement. *Id.* In the present case, the arbitration agreement fails to reveal an intent that the arbitrator is to determine arbitrability issues. Therefore, the court must address whether the arbitration agreement covers Towles's claims.

susceptible of any interpretation that would cover the asserted dispute. *Zandford*, 112 F.3d at 727.

The arbitration policy provides in pertinent part:

Arbitration is the final, exclusive and required forum for the resolution of all employment related disputes which are based on a legal claim.

\* \* \*

A dispute is based on a legal claim and is subject to this Policy if it arises or involves a claim under any federal, state or local statute, regulation or common law doctrine regarding or relating to employment discrimination, terms and conditions of employment, or termination of employment including, but not limited to, the following: ... fair employment practices laws; breach of contract, promissory estoppel, or any other contract theory; and defamation, employment negligence, or any other tort theory.

Towles sued United for defamation, conspiracy, negligent supervision, wrongful discharge, unfair or deceptive trade practices, and reckless or intentional infliction of emotional distress. The agreement's plain language covers Towles's claims relating to employment discrimination, employment negligence, defamation, and all other tort or contract theories. Consequently, we hold the arbitration agreement covers Towles's claims. *See O'Neil*, 115 F.3d at 273–4 (noting that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration).

Therefore, because Towles and United formed a valid, binding arbitration agreement subject to the FAA which encompasses Towles's claims, the FAA requires arbitration. The circuit court thus erred in denying United's motion to compel arbitration.

**REVERSED.**

CURETON and HOWARD, JJ., concur.