# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Palmetto Wildlife Extractors, LLC and Patrick Charping,
Respondents,

v.

Justin Ludy and First Community Bank Corporation
d/b/a First Community Bank, Defendants,

of whom Justin Ludy is the Appellant.

Appellate Case No. 2018-001536

---

Appeal From Richland County
DeAndrea G. Benjamin, Circuit Court Judge

---

Opinion No. 5886
Heard May 4, 2021 – Filed January 5, 2022

---

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

---

Wesley D. Few, of Wesley D. Few, LLC, of Greenville,
for Appellant.

Margaret Nicole Fox and James Mixon Griffin, both of
Griffin - Davis, of Columbia, for Respondents.

---

**KONDUROS, J.:** In this dispute between members of a limited-liability company,
Justin Ludy appeals the circuit court's denial of his motion to compel arbitration of
certain claims. Ludy argues the parties' Operating Agreement provided "any

dispute" about arbitrability would be decided in arbitration.  We affirm in part, reverse in part, and remand.

**FACTS/PROCEDURAL HISTORY**

On April 6, 2012, Ludy formed Palmetto Wildlife Extractors, LLC (the LLC). Patrick Charping became a member of the LLC in 2014 in exchange for a capital contribution of $49,000.  On October 13, 2014, Charping and Ludy executed an amended Operating Agreement (the Agreement) for the LLC.  The Agreement stated each member owned a 50% financial interest, which the Agreement defined as "a Member's rights to share in profits and losses, a Member's rights to receive distributions[,] and a Member's Capital Interest."  Ludy maintained a 51% "Governance Interest," which was defined as "all a Member's rights as a Member in the Company, other than financial rights."  Additionally, the Agreement provided:

> 12.14.  Arbitration.  Any controversy or claim arising out of or related to this Agreement or the breach thereof, shall be settled, except as may otherwise be provided herein, by binding arbitration in accordance with [sections 15-48-10 to -240 of the South Carolina Code] and the arbitration award may be entered as a final judgment in any court having jurisdiction thereon.  Any dispute as to whether a controversy or claim is subject to arbitration shall be submitted as part of the arbitration proceeding.

The Agreement also stated:

> The LLC shall be dissolved only upon the occurrence of one of the following "Dissolution Events":
>
> 11.1.1. The affirmative vote of all of the Members owning a Governance Interest;
>
> 11.1.2. Any event occurs that makes it unlawful for all or substantially all of the business of the LLC to be continued, but any cure of illegality within ninety (90) days after notice to the LLC of the event is effective

retroactively to the date of the event for purposes of this section;

11.1.3. On application by a Member or a dissociated Member, upon entry of a judicial decree as provided by Section 33-44-801(5) of the Act;[1] or

11.1.4. The filing by the Secretary of State of a certificate administratively dissolving the LLC pursuant to Section 33-44-810 of the Act.

Disagreements arose between Ludy and Charping over various financial matters. As a result, Charping and Ludy amended the Agreement in October 2015 to set their salaries and to prohibit Ludy from withdrawing money for personal use unless Charping agreed to the withdrawal. However, according to Charping, he and Ludy continued to have similar issues as before.

On April 25, 2017, Ludy filed a complaint (the Lexington Suit) against Charping in the Lexington County Court of Common Pleas, seeking various remedies stemming from the Act, including the judicial expulsion and dissociation of Charping from the LLC.

Charping and the LLC (collectively, Respondents) filed a complaint against Ludy and First Community Bank Corporation (the Bank) in the Richland County Court of Common Pleas on May 10, 2017. That complaint alleged causes of action including breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, civil conspiracy, and defamation. Additionally, Respondents sought the appointment of a receiver pursuant to section 33-44-803(a), an accounting, and judicial dissolution of the LLC pursuant to section 33-44-801 on one or more of the following grounds:

a. another member has engaged in conduct relating to the company's business that makes it not reasonably practicable to carry on the company's business with that member;

---

[1] The Act refers to the Uniform Limited Liability Company Act of 1996, S.C. Code Ann. §§ 33-44-101 to -1208 (2006).

b.  it is not otherwise reasonably practicable to carry on the company's business in conformity with the articles of organization and the operating agreement; and

c.  the member in control of the company has acted, is acting, or will continue to act in a manner that is unlawful, oppressive, fraudulent, or unfairly prejudicial to Plaintiff Charping.

Respondents' complaint alleged Ludy had taken over $126,000 more than Charping had taken from the LLC's financial accounts since 2015.  They asserted Ludy used the LLC's bank accounts as his own personal accounts—writing checks and withdrawing funds to pay for expenses unrelated to the business.  They contended that even after the Agreement was amended, Ludy continued using the business account for personal use, withdrawing approximately $19,347.39 for personal expenses in 2016 and $3,729.76 in personal expenses during the first quarter of 2017.  Respondents asserted Ludy withdrew $57,944.92 for tax payments in 2016, whereas Charping only withdrew $24,197.62—a difference of $33,747.30.  They alleged that when Charping would withdraw funds to reduce "the imbalance in the capital accounts, Ludy would become very agitated, upset[,] and confrontational." They asserted Ludy began restricting Charping's access to monitor the expenses incurred by the LLC.  Charping stated in an affidavit that on March 31, 2017, Ludy limited Charping's access to financial information and customer data within the LLC's financial software, which prevented him from writing estimates while working and updating financial information on large projects.

Additionally, Respondents asserted that in April 2017, Charping withdrew $32,000 for taxes after verifying the amount with the LLC's tax accountant.  Thereafter, Respondents contended "Ludy snapped, accused Charping of theft, and blocked Charping's access to [the LLC's] accounting software and social media sites.  They also alleged Ludy and the Bank removed Charping from the LLC's bank account, preventing him from accessing any funds or viewing any account information. Further, they contended Ludy failed to make loan payments the LLC owed that Charping had personally guaranteed, which harmed Charping's credit and exposed him to personal liability.  Charping asserted in his affidavit that Ludy's failure to make some of these payments also negatively impacted the credit history of the LLC.

Following the filing of Respondents' complaint in Richland County, Ludy dismissed the Lexington Suit pursuant to Rule 41(a), SCRCP.  On June 6, 2017,

Ludy filed a motion to dismiss or stay and compel arbitration. The motion stated Ludy sought "an order dismissing this case and compelling arbitration" and "dismissing or staying this action and compelling arbitration of this dispute." On June 29, 2017, Charping moved the court pursuant to section 15-65-10 of the South Carolina Code[2] for an order appointing a receiver for the LLC. On July 14, 2017, Ludy filed an answer and counterclaim against Charping, reasserting the claims originally raised in the Lexington Suit along with others. Ludy counterclaimed for (1) breach of fiduciary duty; (2) breach of contract; (3) breach of contract accompanied by a fraudulent act; (4) the imposition of a constructive trust; (5) breach of the duty of loyalty; (6) breach of the duty of good faith and fair dealing; (7) injunctive relief under Rule 65, SCRCP; and (8) judicial expulsion and dissociation. The pleading stated Ludy was filing it "out of an abundance of caution in view of and subject to the pending motion to dismiss and compel arbitration." On July 28, 2017, Respondents moved for the case to be assigned to the business court program. On December 27, 2017, Charping filed a response in opposition to Ludy's motion to compel arbitration. Charping argued the plain language of the arbitration clause illustrated it was not applicable to the statutory claims for judicial dissolution, appointment of a receiver, and an accounting. He also asserted Ludy had waived his right to demand arbitration of the claims by first suing Charping in the Lexington County circuit court.

The circuit court heard the motion to compel arbitration on March 1, 2018. Ultimately, the court granted in part and denied in part Ludy's motion to compel arbitration. The circuit court first found Ludy did not waive the right to arbitrate. The court noted, "In an abundance of caution, Defendant Ludy filed an Answer and Counterclaim on July 14, 2017 and noted in the pleading that the Court must decide his Motion to Dismiss or Stay and Compel Arbitration." The court also determined some of the causes of action raised in Respondents' complaint were subject to arbitration and some were not.

The circuit court found Respondents' claim one, a derivative claim for breach of fiduciary duty, and claim two, a derivative claim for aiding and abetting breach of fiduciary duty, were subject to arbitration.[3] The court found Respondents' claims three, civil conspiracy; four, defamation; and five, requesting the appointment of a

---

[2] Section 15-65-10 provides, "A receiver may be appointed by a judge of the circuit court, either in or out of court" in a variety of situations. S.C. Code Ann. § 15-65-10 (2005).

[3] Respondents did not appeal the court's findings that Ludy did not waive the right to arbitration or that claims one and two were subject to arbitration.

receiver, an accounting, and judicial dissolution; were not subject to arbitration. It determined the claims for civil conspiracy and defamation were tort claims that did not implicate the Agreement and were not subject to arbitration. The court also found Section 11.1.3 of the Agreement states a court must enter a judicial decree dissolving the company pursuant to section 33-44-801 of the South Carolina Code. The court determined Respondents' claim requesting the appointment of a receiver, an accounting, and judicial dissolution was not subject to arbitration as the Agreement specifically requires a finding by a court. The court stayed causes of action three, four, and five, while causes of action one and two proceeded to arbitration.[4]

On June 30, 2018, Ludy filed a motion to reconsider, arguing the circuit court's order did not address the relatedness of Respondents' three claims that the circuit court did not compel to arbitration—claims three, four, and five. Ludy maintained these claims related to the parties' relationship as former members in the LLC. Ludy also argued the order failed to address the portion of the Agreement that stated the members agreed that any disputes regarding arbitration would be submitted to the arbitrators. He additionally asserted that splitting the claims between arbitration and the courts would create confusion amongst the parties, noting if one of the parties were to seek to amend a pleading to add claims, any such claims would also be the subject of a dispute between the parties as to whether or not they should submitted to arbitration or be litigated in court. Ludy requested the circuit court "issue a new or amended order sending all claims (and counterclaims) in the case to arbitration." The circuit court denied the motion by a form order filed July 23, 2018. This appeal followed.

**STANDARD OF REVIEW**

Unless the parties otherwise provide, "[t]he question of the arbitrability of a claim is an issue for judicial determination." *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001). "Determinations of arbitrability are subject to de novo review," but if any evidence reasonably supports the circuit court's factual findings, this court will not overrule those findings. *Stokes v. Metro. Life Ins. Co.*, 351 S.C. 606, 609-10, 571 S.E.2d 711, 713 (Ct. App. 2002).

---

[4] The circuit court also noted the Bank would follow the parties to arbitration.

**LAW/ANALYSIS**

Ludy argues the circuit court erred by not addressing the fact that the Agreement required issues related to the arbitrability of claims be decided by the arbitrator. He contends the Agreement expressly provided "[a]ny dispute as to whether a controversy or claim is subject to arbitration shall be submitted as part of the arbitration proceeding." Further, Ludy maintains the circuit court erred in finding claims three, four, and five were not related to the Agreement. He asserts the three claims relate to the parties' relationship as members in the LLC. Additionally, Ludy contends the claim requesting the appointment of a receiver, an accounting, and judicial dissolution is addressed by the provisions of section 15-48-120 of the South Carolina Code, providing for "confirmation of an award" in arbitration by the circuit court. Ludy also asserts the circuit court failed to address the relatedness of any counterclaims, third-party claims, or other claims that may arise in amendments to the pleadings or statements of the claims in arbitration. He requests that all pending claims and counterclaims be sent to arbitration. We agree in part.

"[A]rbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). "An arbitration clause is a contractual term, and general rules of contract interpretation must be applied . . . ." *Towles v. United HealthCare Corp.*, 338 S.C. 29, 41, 524 S.E.2d 839, 846 (Ct. App. 1999). "[P]arties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract." *Henry Schein, Inc.*, 139 S. Ct. at 527. When a dispute arises, the parties can disagree not only about the merits of the dispute but also about the threshold arbitrability question—whether the arbitration agreement applies to that particular dispute. *Id.* The United States Supreme Court has "held that parties may agree to have an arbitrator decide not only the merits of a particular dispute but also '"gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Id.* at 529 (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). "This line of cases merely reflects the principle that arbitration is a matter of contract." *Rent-A-Ctr., W., Inc.*, 561 U.S. at 69. As long as the parties' agreement delegates the arbitrability question to an arbitrator "by 'clear and unmistakable' evidence," a court may not override the contract and decide the arbitrability question. *Henry Schein, Inc.*, 139 S. Ct. at 529-30 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In *Towles*, 338 S.C. at 41 n.5, 524 S.E.2d at 846 n.5, this court noted that the arbitrator, instead of

the court, determines whether an issue is arbitrable only when the contract clearly demonstrates the intent for the arbitrator to make that decision.

"The construction of a clear and unambiguous contract is a question of law for the court to determine." *Williams v. Gov't Emps. Ins. Co. (GEICO)*, 409 S.C. 586, 594, 762 S.E.2d 705, 710 (2014) (emphasis omitted). "The cardinal rule of contract interpretation is to ascertain and give effect to the intention of the parties and, in determining that intention, the court looks to the language of the contract." *First S. Bank v. Rosenberg*, 418 S.C. 170, 180, 790 S.E.2d 919, 925 (Ct. App. 2016) (quoting *Watson v. Underwood*, 407 S.C. 443, 454-55, 756 S.E.2d 155, 161 (Ct. App. 2014)). "If the contract's language is clear and unambiguous, the language alone determines the contract's force and effect. When a contract is unambiguous, a court must construe its provisions according to the terms the parties used as understood in their plain, ordinary, and popular sense." *Ashley River Props. I, LLC v. Ashley River Props. II, LLC*, 374 S.C. 271, 280, 648 S.E.2d 295, 299 (Ct. App. 2007) (citation omitted).

This court recently addressed a dispute concerning an arbitration clause that provided for arbitrability to be determined by the arbitrator. *Doe v. TCSC, LLC*, 430 S.C. 602, 846 S.E.2d 874 (Ct. App. 2020). In that case, this court noted, "The [Federal Arbitration Act (FAA)] presumes parties intend that the court, rather than an arbitrator, will decide 'gateway' issues related to arbitration, including whether the arbitration agreement is valid and enforceable and whether it covers the parties' dispute." *Id.* at 608, 846 S.E.2d at 877. The court found, "The parties may, of course, delegate these gateway issues to an arbitrator as long as there is 'clear and unmistakable' evidence of such delegation." *Id.* (quoting *First Options of Chicago, Inc.*, 514 U.S. at 944). The court determined that because the delegation clause clearly and unmistakably committed issues regarding the "'arbitrability of the claim or dispute' to the arbitrator, the FAA require[d] [the court] to honor that agreement and leave resolution of these discrete gateway issues to the arbitrator." *Id.* at 609, 846 S.E.2d at 877. This court ultimately determined the arbitrator must decide whether the claims arise out of or relate to the agreement. *Id.* at 615, 846 S.E.2d at 881. The court remanded the matter to the circuit court to grant the motion to compel arbitration in order for the arbitrator to rule upon whether the claims were subject to the arbitration contract. *Id.* at 616, 846 S.E.2d at 881.

Here, Respondents argue because Charping could not have foreseen Ludy would engage in the tortious conduct underlying Charping's claims for civil conspiracy and defamation, such claims are outside the scope of the arbitration clause. In *Aiken v. World Finance Corp. of South Carolina*, 373 S.C. 144, 151, 644 S.E.2d

705, 709 (2007), the supreme court found an arbitration agreement did not apply to outrageous acts that would not have been foreseen at the time the parties executed the agreement to arbitrate. The court held, "Because even the most broadly-worded arbitration agreements still have limits founded in general principles of contract law, this [c]ourt will refuse to interpret any arbitration agreement as applying to outrageous torts that are unforeseeable to a reasonable consumer in the context of normal business dealings." *Id.*

However, in *Doe*, this court's majority opinion examined a contention similar to the parties' here and held, "[W]hether the exception applies is a question the parties delegated to the arbitrator, not the court." 430 S.C. at 616, 846 S.E.2d at 881. "Because the outrageous and unforeseen torts exception relates to . . . the arbitrability of the dispute[,] . . . precedent requires that we honor the parties' choice to leave the issue of the exception to the arbitrator." *Id.* (citing *Chassereau v. Glob. Sun Pools, Inc.*, 373 S.C. 168, 171, 644 S.E.2d 718, 720 (2007) (treating the outrageous and unforeseen torts exception as a question of the arbitrability of a claim and noting, "*[u]nless the parties provide otherwise*, the question of the arbitrability of a claim is an issue for judicial determination" (emphasis added))). The court noted "the Supreme Court clarified this point just last term" in *Henry Schein, Inc. Doe*, 430 S.C. at 616, 846 S.E.2d at 881. The Court in *Henry Schein, Inc.* observed, "Even when a contract delegates the arbitrability question to an arbitrator, some federal courts nonetheless will short-circuit the process and decide the arbitrability question themselves if the argument that the arbitration agreement applies to the particular dispute is 'wholly groundless.'" 139 S. Ct. at 527-28. However, the Court determined the wholly groundless exception is not consistent with the FAA. *Id.* at 529. The *Doe* court noted it expressed no opinion on whether the arbitration contract covered the plaintiff's claims or whether the outrageous and unforeseen torts exception prevented arbitration of those claims. 430 S.C. at 615-16, 846 S.E.2d at 881.

In the present case, the Agreement provided, "Any dispute as to whether a controversy or claim is subject to arbitration shall be submitted as part of the arbitration proceeding." This statement is clear that issues of arbitrability are be determined by the arbitrator. *See Henry Schein, Inc.*, 139 S. Ct. at 529-30 (finding as long as the parties' agreement delegates the arbitrability question to an arbitrator "by 'clear and unmistakable' evidence," a court may not override the contract and decide the arbitrability question). This includes claims arising out of conduct that Respondents assert was unforeseeable. *See Doe*, 430 S.C. at 616, 846 S.E.2d at 881 ("Because the outrageous and unforeseen torts exception relates to . . . the

arbitrability of the dispute[,] . . . precedent requires that we honor the parties' choice to leave the issue of the exception to the arbitrator.").

The Agreement also states, "Any controversy or claim arising out of or related to this Agreement or the breach thereof, shall be settled, *except as may otherwise be provided herein*, by binding arbitration . . . ."  (emphasis added).  The Agreement does not exclude civil conspiracy and defamation from arbitration.  Accordingly, the circuit court erred in not sending these claims—claims three and four—to the arbitration proceeding to determine if the Agreement requires they be arbitrated.

However, claim five—the request for the appointment of a receiver, an accounting, and judicial dissolution—cannot be sent to arbitration because that claim can only be resolved by the circuit court.  In that claim, Respondents sought the dissolution of the LLC pursuant to section 33-44-801 of the Act.[5]  Section 33-44-801(4) provides for dissolution "on application by a member or a dissociated member, upon entry of a 'judicial decree'" if certain events occur.[6]  *See Judicial*, *Black's Law Dictionary* (11th ed. 2019) ("Of, relating to, or by the court or a judge.").

---

[5] Judicial dissolution is referenced in the Agreement, which provides the LLC may be dissolved by "judicial decree" pursuant to section 33-44-801(5).  That subsection refers to an application to dissolve a limited liability company "on application by a transferee of a member's interest."  § 33-44-801(5).

[6] Those events include the following, which are the same grounds listed in Respondents' complaint seeking judicial dissolution:

> (b) another member has engaged in conduct relating to the company's business that makes it not reasonably practicable to carry on the company's business with that member;
>
> (c) it is not otherwise reasonably practicable to carry on the company's business in conformity with the articles of organization and the operating agreement; [or]
>
> . . .
>
> (e) the managers or members in control of the company have acted, are acting, or will act in a

Claim five also requested the appointment of a receiver. In Respondents' complaint, they asserted that request for relief was pursuant to section 33-44-803(a) of the Act. That section provides, "After dissolution, a member who has not wrongfully dissociated may participate in winding up a limited liability company's business, but on application of any member, member's legal representative, or transferee, *the circuit court*, for good cause shown, may order judicial supervision of the winding up." § 33-44-803(a) (emphasis added). Respondents also filed a separate motion to appoint a receiver under section 15-65-10. That section provides, "A receiver may be appointed by *a judge of the circuit court*." § 15-65-10 (emphasis added). Therefore, both of these matters can only be resolved by the circuit court, not by an arbitrator. Accordingly, claim five falls under the exception to arbitration provided by the Agreement. We disagree with Ludy's argument that the confirmation of the arbitration award by the circuit court would accomplish this.

Therefore, we affirm the circuit court's decision that claim five—requesting the appointment of a receiver, an accounting, and judicial dissolution—was not subject to arbitration. We reverse the circuit court's decision as to claims three—civil conspiracy—and four—defamation—and remand the case to the circuit court to send claims three—civil conspiracy—and four—defamation—to the arbitration proceeding for a determination of whether such claims fall within the scope of the arbitration agreement.

The circuit court ruled on the arbitrability of only the causes of action raised in Respondents' complaint. It did not rule on the causes of action Ludy raised by counterclaim. We note that Ludy's answer and counterclaim stated it was filed out of an abundance of caution in the event his motion to compel arbitration was denied. Ludy's motion to compel arbitration sought to compel the entire case. At the hearing on the motion to compel, Ludy argued the entire case should go to

---

manner that is unlawful, oppressive, fraudulent, or unfairly prejudicial to the petitioner . . . .

S.C. Code Ann. § 33-44-801(4).

Although the operating agreement only referenced subsection 5, section 33-44-103(b) provides, "The operating agreement may not: . . . . (6) vary the requirement to wind up the limited liability company's business in a case specified in [s]ection 33-44-801(3) or (4) . . . ." § 33-44-103(b).

arbitration including Respondents' claims against the Bank. Following the circuit court's order compelling only some of Respondents' causes of action, Ludy filed a Rule 59(e), SCRCP, motion, requesting the circuit court "issue a new or amended order sending all claims (and counterclaims) in the case to arbitration." The circuit court's order denied the motion without further explanation.

"If the [appellant] has raised an issue in the lower court, but the court fails to rule upon it, the [appellant] must file a motion to alter or amend the judgment in order to preserve the issue for appellate review." *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000). "Once [an] issue has been properly raised by a Rule 59(e) motion, it appears that it is preserved and a second motion is not required if the trial court does not specifically rule on the issue so raised." *Coward Hund Constr. Co. v. Ball Corp.*, 336 S.C. 1, 4, 518 S.E.2d 56, 58 (Ct. App. 1999) (quoting James F. Flanagan, *South Carolina Civil Procedure* 475 (2d ed. 1996)). "'[T]he Supreme Court identifies two ways to preserve the issue: "a ruling by the trial judge or a post-trial motion." The language implies that a properly requested ruling under Rule 59 is sufficient without a specific judicial decision on the matter.'" *Pye v. Est. of Fox*, 369 S.C. 555, 566, 633 S.E.2d 505, 511 (2006) (footnotes omitted by court) (quoting Flanagan, *South Carolina Civil Procedure* 475-76), *overruled on other grounds by Paradis v. Charleston Cnty. Sch. Dist.*, 433 S.C. 562, 861 S.E.2d 774 (2021); *see also Zurich Am. Ins. Co. v. Tolbert*, 378 S.C. 493, 500 n.2, 662 S.E.2d 606, 610 n.2 (Ct. App. 2008) (holding an issue preserved for appellate review when the circuit court's order failed to address an issue, the appellants raised the issue in a Rule 59(e) motion, and the circuit court still did not rule on it), *aff'd*, 387 S.C. 280, 692 S.E.2d 523 (2010).

Additionally, "[w]hen a party receives an order that grants certain relief not previously contemplated or presented to the trial court, the aggrieved party must move, pursuant to Rule 59(e), SCRCP, to alter or amend the judgment in order to preserve the issue for appeal." *In re Timmerman*, 331 S.C. 455, 460, 502 S.E.2d 920, 922 (Ct. App. 1998) (citing *Godfrey v. Heller*, 311 S.C. 516, 429 S.E.2d 859 (Ct. App. 1993) (finding when a theory of relief was first raised in the lower court's order, the appellant must challenge this theory with a Rule 59, SCRCP, motion))).

As our supreme court has observed, "it may be good practice for us to reach the merits of an issue when error preservation is doubtful." *Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 330, 730 S.E.2d 282, 285 (2012). "We are mindful of the need to approach issue preservation rules with a practical eye and not in a rigid, hyper-technical manner." *Herron v. Century BMW*, 395 S.C. 461, 470, 719 S.E.2d 640, 644 (2011).

Here, Ludy filed his pleading setting forth his answer and counterclaims after he moved to compel arbitration, and the pleading stated it was filed only out of an abundance of caution. The circuit court did not rule on whether Ludy's counterclaims should be sent to arbitration. Ludy's position has consistently been that the entire matter should be sent to arbitration. In his Rule 59(e) motion and appeal to this court, he specifically requests that all claims and counterclaims be sent to arbitration. Thus, we find this argument is preserved for appellate review. Therefore, on remand, the circuit court shall use the same criteria described above to determine whether any of Ludy's counterclaims fall within an exception to arbitrability provided in the Agreement, similar to the manner in which this court determined Respondents' claim 5 was not subject to arbitration. Apart from any counterclaims that are specifically exempted from the Agreement, if there is any dispute over the arbitrability of Ludy's counterclaims, the circuit court should send the counterclaims to the arbitrator to decide which are arbitrable under the Agreement.

Accordingly, the circuit court's order is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**GEATHERS and MCDONALD, JJ., concur.**