**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Viola M. Hackworth, as Personal Representative of the Estate of Eugene Boles a/k/a Eugene N. Boles, deceased, Respondent,

v.

Bayview Manor, LLC d/b/a Bayview Manor, Epic MGT, LLC, Epic Group, Limited Partnership, Teddie Simmons, John Does, and Richard Roe Corporations, Appellants.

Appellate Case No. 2019-001536

———

Appeal From Beaufort County
Edgar W. Dickson, Circuit Court Judge

———

Unpublished Opinion No. 2023-UP-096
Heard October 3, 2022 – Filed March 15, 2023

———

**REVERSED AND REMANDED**

———

A. Todd Darwin, of Holcombe Bomar, P.A., and A. Walker Barnes, of Boulier Thompson & Barnes, LLC, both of Spartanburg, for Appellants.

Kenneth Luke Connor, Christopher Caleb Connor, and Anne Katharine Moore, all of Connor & Connor LLC, and Allen Keith McAlister, Jr., of Hawk Law Group, all of Aiken, for Respondent.

**PER CURIAM:** In this wrongful death action, Viola Hackworth, as personal representative of the estate of Eugene Boles (the Estate), sued Bayview Manor, LLC, a nursing home, and several of its affiliates: Epic MGT, LLC; Epic Group, LP; Teddie Simmons, the nursing home administrator; John Does; and Richard Roe Corporations (collectively, Bayview Manor) for damages. Bayview Manor moved to compel arbitration, and the motion was denied. Bayview Manor now appeals the order denying its motion to compel arbitration, or in the alternative, for a non-jury trial. We reverse and remand for arbitration.

## I.

In October 2012, Boles executed and recorded an agreement giving his sister, Hackworth, a general durable power of attorney over his affairs. In 2015, Boles suffered a stroke and, as a result, required full-time nursing care. On November 2, 2015, Boles was transferred to Bayview Manor for continued care and treatment. A little over a year later, on December 14, 2016, Boles was found unresponsive by staff at Bayview Manor and was transported by EMS to Beaufort Memorial Hospital. He passed away later that day. It is alleged that, while at Bayview Manor, Boles suffered neglect, malnutrition, and severely infected pressure sores, which ultimately led to his death.

Hackworth, in her capacity as personal representative to the Estate, filed this wrongful death action against Bayview Manor. Bayview Manor filed both an answer and a motion to compel arbitration, or, in the alternative, for a non-jury trial. The motion to compel arbitration alleged that, at the time of Boles' admission to Bayview Manor, Hackworth signed and executed an Admission Agreement, containing an arbitration provision, as well as a separate Arbitration Agreement. In support of the motion, Bayview Manor attached both agreements, as well as affidavits from Christy Drinkard, the administrator at Bayview Manor in charge of business records, and Lucy Caruso, the admissions director at the time of Boles' admission. Caruso's affidavit stated she met with Hackworth on both November 2 and 3, 2015, she explained both agreements to Hackworth, and Hackworth signed them. Drinkard's affidavit stated Hackworth signed the Admission Agreement on the day Boles was admitted.

The Admission Agreement was a ten-page contract that contained the terms of Bayview Manor's administration of care to Boles; arrangement for payment for Boles' care; a waiver of jury trial provision; and an "Optional Arbitration Clause,"

which stated in its entirety:

> **Optional Arbitration Clause:** Any action, dispute, claim or controversy of any kind (tort, contract, equitable or statutory, including but not limited to claims of violations of Resident's Rights) now existing or hereafter arising between the parties, in anyway [sic] arising from or relating to this Agreement governing the Resident's stay at the Facility, shall be resolved by binding arbitration. Such binding arbitration shall be governed by the provisions of the South Carolina Arbitration Code. As appropriate and in the event that the South Carolina Arbitration Code is deemed to not apply, binding arbitration shall be governed by the Federal Arbitration Act. **OPTIONAL: If the parties do not agree to this Arbitration Clause, please mark with an X to void this clause only. I have X this clause ___ initial.**

(Emphasis in original). The opt-out blank was not marked. The Admission Agreement was signed by Caruso, Hackworth, and Clifford Byars (Boles' brother). Each signature was dated November 2, 2015. The separate Arbitration Agreement was signed by Hackworth and Caruso. In the first paragraph of the Arbitration Agreement, the two spaces for the names of the parties to be written by hand remained blank—without either Bayview Manor or Boles inserted as named parties. Hackworth and Caruso's signatures were dated November 3, 2015.

In its memorandum opposing Bayview Manor's motion to compel arbitration, the Estate alleged Caruso's and Drinkard's affidavits contained false representations. Specifically, the Estate asserted Hackworth was not present at Bayview Manor on November 2 or 3, 2015, but was in Florida where she resided. The Estate claimed Hackworth did not arrive at Bayview Manor until November 6, 2015—and, in support, the Estate attached Hackworth's affidavit describing her travel itinerary, as well as a copy of her bank statement showing her travel expenditures. The Estate argued because the motion to compel arbitration was supported by fraudulent affidavits, it should be denied and Bayview Manor should be sanctioned under Rule 11, SCRCP.

Bayview Manor asserted the Estate did not dispute or deny that: 1) Hackworth was Boles' attorney-in-fact; 2) she was involved in the process to admit Boles to Bayview Manor; or 3) she signed both the Admission Agreement and the Arbitration

Agreement. Bayview Manor claimed, therefore, that both the arbitration provision from the Admission Agreement and the Arbitration Agreement were valid contracts, and each bound the Estate to arbitrate just the type of lawsuit at issue here.

At the motion to compel hearing, Bayview Manor acknowledged the dates on the two agreements were allegedly incorrect but argued the dates were not material to whether a contract was formed because there was no dispute Hackworth did, in fact, sign the two agreements. The circuit court took the matter under advisement and, later, issued a Form 4 order denying the motion to compel arbitration.

Bayview Manor's reconsideration motion, seeking rulings on each of its arguments from the memorandum in support of the motion to compel, was denied in another Form 4 order. This appeal follows.

## II.

We hold there is no dispute that Hackworth, with Boles' power of attorney, and Bayview Manor entered into the Admission Agreement, which contained an enforceable arbitration provision. Accordingly, we reverse the circuit court's order and remand for arbitration.

1. We hold the October 2012 general durable power of attorney agreement gave Hackworth the authority to enter into an arbitration agreement on Boles' behalf. *See Arredondo v. SNH SE Ashley River Tenant, LLC*, 433 S.C. 69, 75, 856 S.E.2d 550, 553–54 (2021) (stating regular contract principles are used when reviewing power-of-attorney agreements and when the language of an agreement granting a power of attorney is unambiguous, it alone determines the force and effect of the agreement). The October 2012 power-of-attorney agreement gave Hackworth the power "[t]o do and perform all and every act, deed, matter, and thing whatsoever; in and about my estate, property and affairs as fully and effectually to all intents and purposes as I might or could do in my own proper person, if personally present." This broad language is unambiguous, and it allowed Hackworth to bind Boles to arbitration. *See Kindred Nursing Centers Ltd. P'ship v. Clark*, 581 U.S. 246, 249, 256 (2017) (finding the broad language of a power-of-attorney agreement, which stated the attorney-in-fact had "'full power . . . to transact, handle, and dispose of all matters affecting me and/or my estate in any possible way,' including the power to 'draw, make, and sign in my name any and all . . . contracts, deeds, or agreements,'" gave the attorney-in-fact authority to enter into an arbitration agreement); *Arredondo*, 433 S.C. at 75–76, 856 S.E.2d at 554 (explaining that, under the "Equal Footing Provision" of the FAA, the language in a power of attorney agreement need not

explicitly reference arbitration in order to be found broad enough to allow an attorney-in-fact to enter into a binding arbitration agreement).

2. We hold Hackworth and Bayview Manor formed an arbitration agreement when they signed the Admission Agreement. Both the South Carolina Arbitration Act and the Federal Arbitration Act (FAA) mandate that when there is an arbitration agreement between two parties, but one party disregards the agreement, the other may move for the court to compel arbitration in the manner provided for in the agreement. 9 U.S.C.A. § 4 (2018); S.C. Code Ann. § 15-48-20(a) (2005). A hearing is then held on the motion, and if the court is satisfied that the "making" of a valid arbitration agreement is "not in issue," it will direct the parties to arbitration. 9 U.S.C.A. § 4; S.C. Code Ann. § 15-48-20(a). If a party denies the existence of an arbitration agreement, and the circuit court finds there is a bona fide dispute regarding whether an arbitration agreement was formed, then "the court shall proceed summarily to the trial" to determine if a valid arbitration agreement was formed. 9 U.S.C.A. § 4; S.C. Code Ann. § 15-48-20(b) (2005). This provision is known as the "Trial Provision." *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019). When a court is deciding whether there is a bona fide dispute regarding the "making" of the arbitration agreement, the court "is obliged to employ a standard such as the summary judgment test." *Id.*; *see also* 9 U.S.C.A. § 4; S.C. Code Ann. § 15-48-20(b). "The party resisting arbitration bears the burden of showing an entitlement to a jury trial under the FAA and must produce some evidence to substantiate the allegations that the prevailing law would release him from a contractual obligation to arbitrate." *Towles v. United HealthCare Corp.*, 338 S.C. 29, 38 n.3, 524 S.E.2d 839, 844 n.3 (Ct. App. 1999). When a party signs a contract, he or she owes a duty to the other party to read the document and learn its contents. *Id.* at 39, 524 S.E.2d at 845. Accordingly, under this duty, when there is no dispute a party has signed an agreement, there can generally be no bona fide dispute he or she is aware of all terms in the agreement. *See id* at 39–40, 524 S.E.2d at 845.

Hackworth did not deny she signed the Admission Agreement, and she did not check the opt-out box of the arbitration provision from the Admission Agreement. Therefore, in this case, the accuracy of the date next to the signatures on the Admission Agreement is immaterial to whether Hackworth formed an agreement with Bayview Manor. Hackworth's signature demonstrates she understood the contents of the Admission Agreement, and the absence of a mark in the arbitration provision's opt-out box demonstrates she assented to be bound by it. *See Simmons v. Benson Hyundai, LLC*, 438 S.C. 1, 7, 881 S.E.2d 646, 649 (Ct. App. 2022) (stating that, under South Carolina law, a contract is formed when there is a meeting of the

minds between the parties as to all essential and material terms, as well as a manifestation of a mutual intent to be bound to those terms).

Further, we find nothing in the language of the arbitration provision demonstrates lack of mutuality. Each party agreed in the arbitration provision to arbitrate claims, which is adequate consideration. *See O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997) ("A mutual promise to arbitrate constitutes sufficient consideration for this arbitration agreement."). Because there is no bona fide dispute of fact regarding whether Hackworth manifested an intent to be bound by the arbitration provision of the Admission Agreement, we hold Hackworth did not meet her burden of proving "the making" of the arbitration agreement within the Admission Agreement is "in issue." *See Towles*, 338 S.C. at 39–40, 524 S.E.2d at 845 (finding employee's signature on the acknowledgement form of an arbitration agreement gave rise to only one inference: that the employee understood the terms of the agreement; therefore, the the Trial Provisions from the FAA and the South Carolina Arbitration Act were not triggered). Accordingly, as long as the arbitration provision is valid, it must be enforced.

3. We find the arbitration provision from the Admission Agreement is valid. Under the "separability" doctrine of *Prima Paint*, we must consider validity challenges specific to the arbitration provision, and in doing so, must separate the arbitration provision from the remainder of the Admission Agreement. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967). We find nothing in the language of the arbitration provision demonstrates unconscionability. The arbitration provision was optional and contained a bolded opt-out box; accordingly, Hackworth, acting as Boles' attorney-in-fact, had a meaningful choice in deciding to enter into the arbitration provision. *Cf. Damico v. Lennar Carolinas, LLC*, 437 S.C. 596, 611–17, 879 S.E.2d 746, 755–58 (2022) (explaining an arbitration provision is unconscionable when a party has no meaningful choice when entering into it or it is so one-sided as to be oppressive). Further, there is nothing in the language of the arbitration provision from the Admission Agreement that demonstrates one-sided or oppressive terms. *Cf. id.* Finally, to the extent there are any other challenges to the enforceability of the arbitration provision of the Admission Agreement, we find they have been abandoned on appeal. *See* Rule 208(b)(1)(D), SCACR (stating an issue which is not argued in the brief is deemed abandoned and precludes consideration on appeal); *Ellie, Inc. v. Miccichi*, 358 S.C. 78, 99, 594 S.E.2d 485, 496 (Ct. App. 2004) (providing where an issue is not argued within the body of the brief but is only

a short, conclusory statement, it is abandoned on appeal).[1] We therefore hold the arbitration provision from the Admission Agreement is enforceable.

4. To the extent the circuit court denied Bayview Manor's motion to compel as a sanction under Rule 11, SCRCP, this was error. Rule 11, SCRCP, is a rule designed to foster attorney responsibility and to deter litigation abuse. *See Kovach v. Whitley*, 437 S.C. 261, 263–65, 878 S.E.2d 863, 864–65 (2022) (emphasizing purpose of Rule 11, SCRCP). Next, an attorney being accused of a Rule 11, SCRCP, violation must be given notice and an opportunity to be heard on the accusation before a sanction may be imposed. *Burns v. Universal Health Servs. Inc.*, 340 S.C. 509, 514, 532 S.E.2d 6, 9 (Ct. App. 2000). If a court then, in its discretion, determines a sanction should be imposed, the court "should, in its order, describe the conduct determined to constitute a violation of the Rule and explain the basis for the sanction imposed." *Runyon v. Wright*, 322 S.C. 15, 19, 471 S.E.2d 160, 162 (1996). In the Form 4 order denying the motion to compel arbitration in this case, the circuit court did not recite any reason Bayview Manor or its attorney should be sanctioned. Accordingly, we find Rule 11, SCRCP, was not the basis of the motion's denial, nor would a denial of the motion have been an appropriate sanction if it was found Bayview Manor or its attorney had violated Rule 11, SCRCP. *See id.* (stating sanctions under Rule 11, SCRCP, may include "an order to pay the reasonable costs and attorney's fees incurred by the party or parties defending against the frivolous action or action brought in bad faith, a reasonable fine to be paid to the court, [a] directive of a nonmonetary nature designed to deter the party or the party's attorney from bringing any future frivolous action or action in bad faith[, or] if appropriate under the facts of the case, the court may order a party and/or the party's attorney to pay a reasonable monetary penalty to the party or parties defending against the frivolous action or action brought in bad faith").

5. Because we remand this case for arbitration under the arbitration provision from the Admission Agreement, we need not consider the remainder of Bayview Manor's issues on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598,

---

[1] We note there has been no citation to law at any point in the procedural history of this case regarding the lack of statutory authority to bind a wrongful death beneficiary to an arbitration agreement, and accordingly, we decline to address the issue on the merits. Rule 208(b)(1)(D), SCACR (stating an issue which is not argued in the brief is deemed abandoned and precludes consideration on appeal). However, we also note that "courts may not refuse to compel arbitration simply because a wrongful death claim is involved." *Dean v. Heritage Healthcare of Ridgeway, LLC*, 408 S.C. 371, 378 n.3, 759 S.E.2d 727, 731 n.3 (2014).

613, 518 S.E.2d 591, 598 (1999) (stating a court need not address remaining issues when another issue is dispositive).

**REVERSED AND REMANDED.**

**GEATHERS and MCDONALD, JJ., and HILL, A.J., concur.**